## Ex parte DRAWBAUGH.

### Judicial records, Secret files of.

1. The files of this court relating to an appeal from the Commissioner of Patents are subject to public inspection and exemplification, like the files relating to any other case, and will not be pre-'served in secrecy on the application of the appellant. The rules of the Patent Office providing for secret files in certain cases cannot be extended to the proceedings of this court when such cases are here on appeal.

2. The record or transcript of any case on review in an appellate court of record, and all documents pertaining thereto, upon being filed with the clerk of the court, become public judicial records, subject to public inspection and exemplification.

No. 10. Patent Appeals. Submitted January 2, 1894.—Decided February 9, 1894.

This was a hearing on an *ex parte* motion made by the appellant in a case on appeal from the Commissioner of Patents, to preserve the files relative to the appeal in secrecy. *Denied.*

The FACTS are sufficiently stated in the opinion.

*Messrs. Church & Church* for the motion.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

We have in this case a motion made of rather a novel character. The appeal is from the Patent Office, and the appellant, upon filing the transcript of the papers pertaining to the appeal with the clerk of this court, has moved the court, by formal motion in writing, " that the files relating to the above appeal be preserved *in secrecy*, and that the clerk of this court be directed not to permit said files, nor any part thereof, *to be inspected*, nor any copy to be taken from said files, except upon request of the appellant or his attorneys, or upon special order of this court first obtained, after due notice to appellant's attorneys."

We are also asked, in order to give effect to the above recited motion, that the provision in one of the rules of this

court, which provides that the clerk shall furnish to any applicant a copy of any paper in said appeals, on payment of the legal fees therefor, be modified, and that copy shall not be furnished of any paper in this case, except upon the special order of the court, or by the consent of the appellant's attorneys.

It is urged that the order moved for is necessary to prevent abuse that will likely occur from an open and unrestrained inspection of the files of papers and transcripts in patent appeals, and especially in interference cases. And in justification of such proposed order of secrecy, it is suggested that the rules and practice of the Patent Office furnish ample precedent and authority for such order, and especially the 15th rule of that office. But it must be recollected that the Patent Office is a branch of one of the executive departments of the government, and that this is a public court of record, governed by very different principles and considerations, in respect to its records and proceedings, from those that apply to an executive department. The rules of the Patent Office have no application to the proceedings of this court, further than they may be involved in what has been done in that office. They may be very necessary and proper for conducting the affairs of that office, and their validity and propriety may be conceded as applied to proceedings there; but it does not follow that similar rules should be adopted and enforced as applicable in an appellate court of record. The Commissioner of Patents is authorized by statute (R. S. U. S., Sec. 483), subject to the approval of the Secretary of the Interior, to make rules and regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office. In regard to the records of that office, however, the statute provides (R. S. U. S., Sec. 892) that it shall be the duty of the Commissioner to furnish copies of records, books, papers, &c., to any person making application therefor, and paying the fee required by law; and it has been decided by the Supreme Court of the United States, in the case of *Boyden* v. *Burke*, 14 How.,

575, that the refusal by the Commissioner to furnish such copies when required and the payment of legal charges therefor, would subject the Commissioner to an action for damages. It is not every sort of record or paper, therefore, that the Commissioner of Patents can protect from inspection and copy. But the record or transcript brought into this court on appeal, after judgment entered on the proceedings by the tribunal appealed from, do not stand upon the footing of original papers placed in the files of a court of original jurisdiction, and where there has been no trial had or judgment entered thereon. The transcript is brought here to obtain a review of the judgment already rendered by a public tribunal; and the transcript of the record of appeal, and all the papers and documents pertaining thereto, upon being filed with the clerk, become public judicial records of this court, and must be so treated.

Professor Greenleaf, in his work on Evidence, Vol. 1, Sec. 471, in treating of the right to inspect and to require copies of public documents and judicial records, says: " It has been admitted, from a very early period, that the inspection and exemplification of the *records of the King's courts is the common right of the subject.* This right was extended by an ancient statute (46 Edw. III., in the Preface to 3 Coke's Rep., p. 4), to cases where the subject was concerned against the King. The exercise of the right does not appear to have been restrained, until the reign of Charles II., when, in consequence of the frequency of actions for malicious prosecution, which could not be supported without a copy of the record, the judges made an order for the regulation of the sessions of the Old Bailey, prohibiting the granting of any copy of an indictment for felony without a special order, upon motion in open court, at the general jail delivery. This order, it is to be observed, relates only to indictments for felony. . In cases of misdemeanor, the right to a copy has never been questioned. But in the United States, no regulation of this kind is known to have been expressly made; and any limitation of

the right to a copy of a judicial record or paper, when applied for by any person having an interest in it, would probably be deemed repugnant to the genius of American institutions."

The validity of this limited restriction upon the right of the subject, imposed by the English judges, has been strongly doubted, as may be seen in the case of *Browne* v. *Cumming*, 10 B. & Cr., 70, where the query is put: What power had the judges to alter the law?

There seems to be a distinction made between judicial records and other mere official records; and this distinction is referred to in the case of *Brewer* v. *Watson*, 71 Ala., 299. That was a case involving the right to inspect public official records not of a judicial character, and the court notes the distinction and observes, that of judicial records, by statute and unvarying usage, the custodian, upon payment of fees allowed by law, *is bound to furnish copies*. And there is also a distinction made in some of the cases between the right to inspect judicial records *after trial*, and the right to inspect and take copies from papers merely filed, but before any action had thereon by the court. In the latter case, it has been held, in one instance at least, that the court might withhold from a publisher of a newspaper the right to inspect and take copies of papers or documents on file, for publication before the trial of the cause. That was done in the case of *Schmedding* v. *May*, 85 Mich., 1, and the same power was intimated to exist, rather than decided, in the case of *Cowley* v. *Pulsifer*, 137 Mass., 392. But those decisions have no application to this case.

If the order moved for in this case be made, it would have to be made in all similar cases; and it would necessarily give rise to constant applications and contests as to the rights of parties to inspect the files of transcripts and to obtain copies thereof. Such claims of right, and contests over them, are not the ordinary incidents of judicial proceeding; and any attempt to maintain secrecy, as to the records of the court, would seem to be inconsistent with the common

understanding of what belongs to a public court of record, to which all persons have the right of access, and to its records, according to long established usage and practice.

We find no warrant, either in the patent law, or the common law of the land, for making the order applied for in this case; and the motion must therefore be denied.

*Motion denied.*