**UNITED STATES, Petitioner,**

v.

**Honorable Alfred BURKA, Associate Judge,
Superior Court of the District of
Columbia, Respondent.**

**No. 6261.**

District of Columbia Court of Appeals.

Argued Jan. 27, 1972.

Decided March 27, 1972.

Richard L. Cys, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, John F. Evans, and Richard S. Shine, Asst. U. S. Attys., were on brief, for petitioner. Asst. U. S. Attys. Earl J. Silbert, James F. McMullin and Paul L. Friedman also entered appearances for petitioner.

William W. Greenhalgh, Washington, D. C., for respondent.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

This original petition for a writ in the nature of mandamus presents a question which goes to the heart of the integrity of the judiciary. Access to a complete transcript of criminal proceedings has been denied the prosecution. In addition, further hearing "on the record" respecting the transcript has been refused. The petition also seeks to enjoin future limitation on access to court records. It appears from the material before us that some of the transcript may contain critical or unflattering comments by respondent.

The United States Attorney's office made oral and written requests to the court reporter, with proper authorization for payment, in seeking a copy of the desired transcript. The transcript was not received evidently because the trial judge issued an order which stated that the court reporter was "not to prepare the transcript until the Court had determined if daily copy was necessary", and that "the government was not entitled to the transcript in any event, unless good cause [was] shown." An "Addendum to Order" stated:

"  .   .   . [T]he Court again denies the request for transcript and calls to the attention of the U. S. Attorney and counsel for defense in all cases that the profligate and spurious practice of ordering unneeded transcripts will not be tolerated by this Court." [1]

At issue in this petition is the question of whether the trial judge may sequester transcripts of proceedings from inspection by one of the parties. Public access to such proceedings is necessarily a part of this important question.

The Government argues that the guidelines set forth in the Superior Court Civil Rules of Procedure regarding transcriptions of court proceedings and their availability should also apply to criminal proceedings. Civil Rule 201(a) compels the court to record all proceedings held in open court.[2] Section (b) of Rule 201 provides for access by any person to transcripts of such proceedings upon payment of the specified fee.[3] The Government

---

1. Brief for Petitioner, Appendix D.

2. Super.Ct.Civ.Rule 201(a).

3. Super.Ct.Civ.Rule 201(b).

argues that these civil proceeding standards should also apply to criminal proceedings through the language of Criminal Rule 57. Rule 57(a) describes certain civil rules that are directly applicable to criminal proceedings. Although Civil Rule 201 is not specifically mentioned therein, the Government urges that section (b) of Criminal Rule 57 should be used to incorporate Civil Rule 201.[4] Whatever may be said of the strength of this argument it is not possible to conclude that the contrary was intended by the District of Columbia courts when acting in their rule-making capacity under D.C.Code 1967, § 11–946 (Supp. IV, 1971). Certainly it could not have been intended to generally empower anyone to deny a transcript of a criminal proceeding to one able to purchase or otherwise insure payment for it. The inadvertent failure to include Civil Rule 201(a) by reference into the criminal rules by listing it in Criminal Rule 57(a) will not operate to make criminal proceedings less subject to exposure than other judicial proceedings.[5] The general nature of our form of government requires the highest degree of public exposure to trial court proceedings.

The Government also suggests that the provisions of 28 U.S.C. § 753 (1970) [6] (dealing with federal court reporters) should control the Superior Court's practices absent clear modification of the Superior Court's procedures to indicate otherwise. D.C.Code 1967, § 11–946 (Supp. IV, 1971) and prior case law developments dealing with the then Court of General Sessions would support this contention, particularly in view of a general effort to afford equal procedural safeguards in the federal and District of Columbia courts. *See* Lee v. Habib, 137 U.S.App.D.C. 403, 414–416, 424 F.2d 891, 902–904 (1970); Tate v. United States, 123 U.S.App.D.C. 261, 270, 359 F.2d 245, 254 (1966). Moreover, it is obviously the intent of Congress to maintain the highest degree of access to all Superior Court proceedings. Not only does the Court Reorganization Act provide for appointment of court reporters by the Executive Officer, but it also provides "[w]hen necessary" that additional temporary reporting services be contracted for and that sound recordings of proceedings may be used in lieu of usual methods "in any branch, division or courtroom of the court." *See* D.C.Code 1967, § 11–1727(a) (Supp. IV, 1971). In addition, the Executive Officer shall make the records of the court "available at all reasonable times". *See* D.C.Code 1967, § 11–1745(b) (Supp. IV, 1971).

These arguments are consistent with the underlying policy firmly rooted in our judicial system that courtroom proceedings must be public and open.[7] It is only where special circumstances exist (*e. g.,* trade secrets, state secrets, and certain types of family proceedings) that trial courts have been allowed to close their records to the public. Even then, transcripts of such pro-

---

4. Super.Ct.Crim.Rule 57(b) states:
    "*Procedure not otherwise specified.* If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

5. This is consistent with prior case law which has expressed the idea that the availability of a court reporter and transcript of proceedings was of a higher priority in serious criminal cases than in petty crimes or civil cases. House v. United States, D.C.App., 234 A.2d 805, 807 (1967).

6. 28 U.S.C. § 753(b) (1970) specifically provides:
    "Upon the request of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor, or of a judge of the court, the reporter shall promptly transcribe the original records . . . and deliver the [transcript] to the party or judge making the request."

7. *See* U.S.Const. amend. VI; In re Oliver, 333 U.S. 257, 271–272, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

ceedings have usually been made available to the parties.[8]

As early as 1894 the Court of Appeals of the District of Columbia addressed itself to the problems found in not allowing public access to judicial proceedings. In Ex parte Drawbaugh, 2 App.D.C. 404 (1894), the court held that litigation involving the registration of a patent could not be conducted in secrecy in spite of Patent Office rules preventing public disclosure in registration. The court said:

" . . . [A]ny attempt to maintain secrecy, as to the records of the court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access, and to its records, according to long established usage and practice." Id. at 407–408.

The Superior Court of the District of Columbia is a court of record. See D.C.Code 1967, § 11–901 (Supp. IV, 1971).

More recently the problem of excluding the public from court proceedings was presented in a California case involving a newspaper's attempt to gain access to certain closed-door sessions of a criminal proceeding. Oxnard Publishing Co. v. Superior Court of Ventura County, 68 Cal.Rptr. 83 (Cal.Ct.App.1968). In describing the policy underlying the purpose of a "public trial", the rights of the general public were stressed as being of great importance. The court stated:

"A properly-conducted public trial, in addition to serving the interest of the accused and his connections and the interest of the victim and his connections, maintains the confidence of the community in the honesty of its institutions, in the competence of its public officers, in the impartiality of its judges, and in the capacity of its criminal law to do justice. Public trial has been a basic tenet of our

legal heritage, at least since the abolition of the Star Chamber three hundred years ago. Secrecy, on the other hand, is the antithesis of the orderly operation of a public institution, breeding either suspicion, distrust, rumor, and outrage, or apathy, indifference, and neglect." Id. at 91.

Such considerations are even more extant in high-volume courts with maximum public contact. If the proceedings must be public, then the same is true of the record.

In this connection, we deem it highly inappropriate and unwise for trial judges ever to "go off the record", in the sense of having no reporter present or having recordation temporarily cease, when discussing any aspect of a pending case. To the extent that this may limit chamber conferences or bench conferences and require the trial judge to limit the extent of remarks motivated by personal feelings or reactions, this admonition, when followed, can have nothing but a salutary effect. Not just the need for public scrutiny, but also the possibility of appellate review, demands that everything said in court while in litigation be recorded and reported except in the most unusual circumstances. A good rule of thumb is that if a judge's comment should not be recorded and reported it should not have been said in the first place. Judicial power may not be exercised to insulate a judge from repercussions of his own comments. The preventative of forebearance must be used. Without passing on the direct applicability of Part B.1 of the soon-to-be-published approved Standards Relating to the Judge's Role in Dealing with Trial Disruptions, ABA Project on Standards for Criminal Justice, it is appropriate to observe the content thereof:

PART B. CONDUCT OF THE JUDGE

B.1 Judge's responsibility for self-restraint.

(Supp. IV, 1971), and D.C.Code 1967, § 16–311.

---

8. An exception can be seen in some proceedings involving paternity and adoption. See D.C.Code 1967, § 16–2348

The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom. When it becomes necessary during the trial for him to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues."

In view of these considerations and because members of the judiciary must administer justice in an atmosphere of orderly operation with full public disclosure and scrutiny,[9] we conclude that access to the requested transcript by the U. S. Attorney's office should not have been denied. The question remains whether this original proceeding for mandamus should by force of writ correct the error. Of course, alternatives are available through the exercise of superintendent power,[10] perhaps in an appeal from an order of the kind here considered,[11] or in the instant original action. However, in light of what we have here said, we have every reason to believe that upon reflection respondent will correct his erroneous [12] action respecting access to judicial proceedings in this and other cases. For this reason, the present petition for writ in the nature of mandamus is denied, but the Clerk will transmit a certified copy of this opinion forthwith. *See* Brown v. Fauntleroy, 143 U.S.App.D.C. 116, 120, 442 F.2d 838, 842 (1971) (Part III and the cases therein cited).

So ordered.

9. ABA Canons of Judicial Ethics No. 5, Commentary at 16 (May 1971/Tentative Draft) provides:

"Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. The judge must avoid all impropriety and appearance of impropriety. *He must expect to be the subject of constant public scrutiny.* He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen, and he should do so freely and willingly." [Emphasis supplied.]

10. *See* D.C.Code 1967, § 17–302; D.C. Code 1967, § 11–102 (Supp. IV, 1971); and United States v. Yates, D.C.App., 279 A.2d 516 (1971).

11. The United States has also noted an appeal from the orders in question. Respondent urges that appeal is the more appropriate mode of review but hints that failure to timely pursue it, in preference to this mandamus action, might justify its dismissal. We do not reach these issues in light of our informal alternative.

12. Indeed, in his response to the government's supplemental memorandum, which appears to establish a course of conduct affecting access to complete transcripts, respondent embraces language from Will v. United States, 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305 (1967), suggesting that he recognizes· he "may have erred in ruling on [the matters in question]."