UNITED STATES of America

v.

John MITCHELL et al.

In re NATIONAL BROADCASTING
COMPANY, INC., et al.

Misc. No. 74–128.

United States District Court,
District of Columbia.

Dec. 5, 1974.

Order Jan. 8, 1975.

James Neal, Associate Spec. Prosecutor, Peter M. Kreindler, Counsel to Spec. Prosecutor, Washington, D. C., for United States.

Floyd Abrams, New York City, Donald J. Mulvihill, Washington, D. C., for applicants National Broadcasting Company, Inc., American Broadcasting Companies, Inc., CBS Inc., and Radio Television News Directors Association.

Joseph A. Califano, Jr., Richard M. Cooper. Washington, D. C., for applicant Warner Communications, Inc.

Herbert J. Miller, Jr., Raymond G. Larroca, William H. Jeffress, Jr., Washington, D. C., for former President Nixon.

Ronald L. Plesser, Washington, D. C., for Amicus Reporters Committee for Freedom of the Press.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Several television and radio broadcasters noted in the caption moved pursuant to Rule 47 of the Federal Rules of Criminal Procedure requesting copies of those portions of taped conversations initially recorded in former President Nixon's offices which were subpoenaed, received in evidence, and played to the jury in this widely publicized criminal case still on trial before Judge John J. Sirica. Copying would be accomplished at applicants' expense with the aid of the Clerk of Court from the evidentiary tapes. There would be no recording in the courtroom. Applicants propose to broadcast at least portions of the tapes locally and nationwide over both television and radio.

The reproduction of trial evidence received in tape form for subsequent public use raises an issue of first impression in this District and the Clerk of Court, James F. Davey, properly seeks guidance from the Court. No published precedent directly in point has been cited or found in any other jurisdiction. The matter has been treated as a miscellaneous proceeding and separately assigned at Judge Sirica's request. All defendants and the Special Prosecutor have been served and the Court has before it various briefs and affidavits, including an affidavit from the Clerk of Court explaining some of the mechanical and administrative considerations presented. Former President Nixon, by his attorneys, opposes the motion. The Reporters' Committee for Freedom of the Press has been granted permission to file a brief amicus.[1]

■ Applicants claim a constitutional right to reproduction of the tapes under the First Amendment to the Constitution. This claim is wholly without merit. A public trial is taking place, all media, including applicants, have been present, and, by order of the trial judge, provided with earphones to enable their representatives to hear exactly what the jury heard when the tapes were actually played in the courtroom. There were no restraints placed on their subsequent reporting. Indeed, the contents of the tapes have been fully reported and written transcripts were made available to all media to assure reasonable accuracy.

■ The Supreme Court has repeatedly held in recent years, although admittedly by split votes, that members of the press are not constitutionally guaranteed a "right of access" greater than that afforded the general public. Pell v. Procunier, 94 S.Ct. 2800, 2810 (1974); Saxbe v. Washington Post, 94 S.Ct. 2811, 2815 (1974); Branzburg v. Hayes, 408 U.S. 665, 684–685 (1972); Estes v. Texas, 381 U.S. 532, 540 (1965). *See also,* Address of Mr. Justice Stewart,

---

1. In addition, the Mutual Broadcasting System, Inc. has made separate application in letter form.

"Or of the Press," Yale Law School Sesquicentennial Convocation, Nov. 2, 1974, at p. 9:

> So far as the Constitution goes, the autonomous press may publish what it knows, and may seek to learn what it can. But this autonomy cuts both ways. The press is free to do battle against secrecy and deception in government. But the press cannot expect from the Constitution any guarantee that it will succeed. There is no constitutional right to have access to particular government information or to require openness from the bureaucracy. . . . The Constitution, in other words, establishes the contest, not its resolution.

■ The question presented by the applications then boils down to a far simpler issue. Are representatives of broadcast media entitled along with the general public to aural copies of exhibits after they have been received in evidence in a criminal trial as a normal concomitant of the constitutional requirements of a public trial found in the Sixth Amendment to the Constitution?

■ As a matter of practice in this court, if requested, a copy of any document or photograph received in evidence is made by the Clerk and furnished at cost of duplicating to any applicant, subject only to contrary instructions that may be given by the trial judge at the time of trial. This privilege of the public to inspect and obtain copies of all court records, including exhibits while in the custody of the Clerk, is of long standing in this jurisdiction and reaches far back into our common law and traditions. Absent special circumstances, *any* member of the public has a right to inspect and *obtain copies* of such judicial records. Ex parte Drawbaugh, 2 App.D.C. 404, 407 (1894). *See also,* United States v. Burka, 289 A.2d 376 (1972) ; Belt v. Pr. George's County Abstract Co., 73 Md. 289, 20 A. 982 (1890).

The Court stated in *Drawbaugh,*

> . . . any attempt to maintain secrecy, as to the records of the court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access and to its records, according to long-established usage and practice.

2 App.D.C. at 407–408. This proposition applies without a showing of a particular "legitimate interest" in the records requested. In re Mosher, 248 F.2d 956, 958 (C.C.P.A.1957).[2]

In this particular instance this general right to have access and copy exhibits is especially reinforced by directives of the Judicial Conference of the United States issued under authority of 28 U. S.C. § 457. The Clerks of Court for District Courts throughout the United States are specifically instructed to retain on file for public inspection for ten years documentation in cases of significant historical importance and then to deposit such materials with the Federal Records Center under the aegis of the General Services Administration for subsequent years under the guidelines set by 44 U.S.C. § 3301 and the implementing regulations appearing at 41 C. F.R. §§ 101–11.101 et seq. Administrative Office of U. S. Courts, Manual for Clerks of United States District Courts, Chapter 13, Exhibit 2, (Ref. 1301.4) at pp. 4–5, item 6(a) (1954),

---

2. The supposed requirement of English common law that one have a personal "legitimate interest" in judicial records before access would be granted was in fact simply a requirement of standing to sue to enforce the right in mandamus where access had been wrongfully denied. See Nowack v. Fuller, 243 Mich. 200, 219 N.W. 749, 60 A. L.R. 1351 (1928). No one in this instance has been denied access to copy the tapes in evidence.

In this jurisdiction the practice has been to make court documents available without a showing of "special interest." Were this an action in mandamus, rather than an application to instruct the Clerk as to Court policy, the media would have standing to compel equal protection of their right of access consistent with that routinely accorded other members of the public. McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir.), cert. denied, 342 U.S. 894 (1951).

directs, among other things, that "case papers and documentary exhibits" filed in criminal cases involving the President or officials appointed by the President must not be disposed of even after ten years. Cases of this type are considered to contain "documentary evidence of movements of historical forces" and "biographical data" of obvious importance for persons interested in "social, economic and political research." *Ibid.*, note to item 6, p. 16.

Thus there is congressional, judicial and executive recognition of the need to make available and preserve materials from a trial like the present, including the evidentiary tapes, bearing as they do directly on executive conduct at the highest levels. It should be noted that Warner Communications, Inc. by its separate application specifically requests access in order to disseminate permanent phonograph and tape recordings of evidentiary tapes for use in homes, libraries and schools.

■ Neither the defendants in this case nor the Special Prosecutor object to release of the tapes, nor has Judge Sirica indicated any reason to deviate from general practice in this instance in the interests of a fair trial. Former President Nixon does object. He seeks to avoid embarrassment and wide publicity, asserting that he still has a property right in the tapes and accordingly a privilege against disclosure, except to the extent that that privilege has been invaded by the doctrine of United States v. Nixon, 417 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Former President Nixon is before the jury as an alleged co-conspirator and his acts, as reflected in the tapes, are pertinent to the theory of the case on which the Special Prosecutor is proceeding. The Court has carefully reviewed transcripts of the tapes in issue. From this review it is apparent that Judge Sirica has assiduously removed extraneous material, including topics relating to national security and considerable irrelevant comment relating to persons not on trial. Only portions of the tapes strictly germane to the criminal proceeding have been played to the jury. Moreover, the portions of the tapes here in issue are now of public record. Although former President Nixon has been pardoned, he has standing to protest release by the Court but he has no right to prevent normal access to these public documents which have already been released in full text after affording the greatest protection to presidential confidentiality "consistent with the fair administration of justice." United States v. Nixon, *supra*, 94 S.Ct. at 3111. His words cannot be retrieved; they are public property and his opposition is accordingly rejected.

It should be understood that the Court is not called upon or in any way attempting to decide whether or not the dissemination of the tapes to the public is or is not desirable. On the one hand, much has been already printed; on the other, the aural atmosphere, emphasis and connotations of the taped discussions may be peculiarly illuminating. The law must be applied and the fact the evidence is in aural form is of no special consequence. The tape exhibits are in evidence and have therefore come into the public domain and the public should have the opportunity to hear them. Whether any individual affected has a right under the law of privacy or related doctrines against anyone who thereafter republishes is not to be determined here. *See, e. g.*, Melvin v. Reid, 112 Cal.App. 285, 297 P. 91, 93 (1931); Briscoe v. Reader's Digest Assn., 93 Cal.Rptr. 866, 483 P.2d 34 (1971); Restatement (I) of Torts, § 867, Comment C (1939).

The courts are a branch of government and a criminal proceeding involving officials holding high positions of public trust must peculiarly remain open for the closest scrutiny and discussion by citizens. It was in just such situations that the Sixth Amendment was intended to have its greatest thrust. As the Supreme Court has succinctly stated, "what transpires in the courtroom is public property." Craig v. Harney, 331 U.S. 367, 374 (1947). Only in this fash-

ion can arbitrary judicial authority be prevented.

Before the tapes can be released, certain immediate obstacles must be overcome. Because the tapes contain material that was not played to the jury, they will have to be rerun to remove the excluded material. There is need, as the Special Prosecutor points out, to preserve the integrity of the tapes as received in evidence during the reproduction process. Considerable time, perhaps running as much as several weeks, will be required to reproduce them. Court personnel and experts now fully committed to the trial must be consulted. Because of these administrative and mechanical difficulties no attempt should be made to provide verbatim sound copies, in addition to the transcript copies already provided, until after the trial.

If and when released, there will be a broad demand for copies, as witnessed by the applications already filed, when availability becomes better known. The office of the Clerk of Court is not equipped with trained personnel or facilities allowing it to become involved in any mass release of numerous copies of the tapes, even at the expense of applicants. Furthermore, if any release is to be made, it must obviously be accomplished on a basis which does not permit overcommercialization of the evidence. Clearly, all persons, whether or not members of the press, desiring copies must be accommodated without special favoritism or priority.

There is time between now and the end of the trial to determine whether a satisfactory mechanism and procedure can be evolved which will permit the Court to prepare only a single copy of the tapes as played and then place its subsequent reproduction and distribution in the responsible hands of an organization, agency or person which, without profit, can, for a defined limited period, assure fair and equitable distribution to all categories of applicants. Without in any way indicating whether it is practical or possible to release aural copies in addition to the transcripts al-

ready released, the Court solicits any suggestions which the Special Prosecutor, the defendants or applicants may have as to an appropriate method for facilitating a release which is consistent with the considerations enumerated generally above. Suggestions should be submitted in concrete detail and filed with the Clerk of Court on or before January 3, 1975.

In the meantime, the Clerk shall upon completion of the trial promptly proceed to reproduce a single set of the tapes in evidence which shall contain only those portions played to the jury during trial. He shall consult with expert personnel to assure accuracy of this reproduction and to avoid compromising the evidentiary value of the exhibit in any respect. He shall advise the Court when this task is completed and withhold the reproduced tapes from public inspection until further order of the Court. Final action on the applications will be taken at a later date in the light of developments. The opposition filed on behalf of former President Nixon is denied.

So ordered.

### ORDER

The Court has considered the joint proposals of the original applicants submitted by their attorneys in an effort to meet the considerations outlined on page seven [the final 3 paragraphs] of the Court's Memorandum and Order of December 5, 1974. The proposals will not be accepted.

The burden is upon the applicants to come forward with a satisfactory plan to be administered without profit by some responsible agency or person other than the Clerk of Court. It is a prerequisite to any plan that commercialization of the tapes or any undignified use of the material be minimized. Applicants have failed even to consider these matters. Moreover they suggest no responsible agency or person to administer the plan and merely undertake to place all of these problems back on the Court, which is not equipped

with necessary funds, technology or manpower.

All pending applications are at this stage denied without prejudice and the matter is transferred back to Judge Sirica, with his approval, for any further action that may be appropriate in the premises at some later date.