Argued and submitted January 31, alternative writ dismissed December 24, 1985

# STATE ex rel KOIN-TV, INC.,
*Plaintiff-Relator,*

*v.*

# OLSEN,
*Defendant.*

## (A8307-04653; SC S31148)

711 P2d 966

John E. Frohnmayer, Portland, argued the cause for plaintiff-relator. On the brief were Barbee B. Lyon and Tonkon, Torp, Galen, Marmaduke & Booth.

Ma Deva Anando, Rajneeshpuram, argued the cause for defendant. With her on the briefs was The Rajneesh Legal Services Corporation.

LENT, J.

## LENT, J.

Is the operator of a television broadcasting station entitled to copy the videotape of a civil defendant's testimony after a trial in which that videotape was played to a jury in open court, marked as an exhibit and received in evidence? We hold that there is no entitlement.

The matter is before us on a motion to dismiss[1] our alternative writ of mandamus commanding the defendant to permit copying or to show cause for his failure to do so. Defendant is the circuit court judge who presided over trial of a civil action in Multnomah County Circuit Court for damages for defamation by one Quick against Bhagwan Shree Rajneesh (Bhagwan) and others. For purposes of the motion, we take the facts alleged in the writ as being true along with those facts that have been conceded to be true in the briefs and argument of the movant.

Quick subpoenaed Bhagwan to appear at the trial to give testimony. The defendants in that case moved to quash the subpoena, and the trial judge denied the motion. Those defendants represented to the trial judge that Bhagwan would not appear, and the trial judge responded that he would issue a warrant for Bhagwan's arrest to be brought before the court. The parties in that case and the judge resolved the matter by agreeing that the testimony of Bhagwan would be videotaped at defendants' cost at a location away from the courtroom, and the judge would preside by telephone over the examination of the witness. Counsel for Quick agreed that the videotape would not be "disseminated" outside the courtroom.

Both the trial of the case and the reported possibility that the Bhagwan would not appear in response to the subpoena had generated news that had been published by plaintiff-relator (KOIN) and others of the media.

---

[1] Prior to 1979 defendant would have raised this contention by demurrer. *See* former ORS 34.170. That section was amended by Oregon Laws 1979, chapter 284, section 70. The permission to demur to the writ was eliminated, and the motion to dismiss was substituted. That chapter concerned the adoption of the Oregon Rules of Civil Procedure, by which the motion to dismiss was substituted for former demurrer practice. ORCP 21 A. The Oregon Rules of Civil Procedure do not govern procedure in this court. ORCP 1 A. Because ORS 34.170 no longer provides for demurrer practice, we accept as a substitute therefor in mandamus proceedings the motion to dismiss as described in ORCP 21 A.(8).

The testimony of Bhagwan was videotaped, and the tape was played in open court in the presence of all persons in the courtroom, including employees of KOIN. The court reporter made the same record of the testimony as if the testimony had been given by deposition and the deposition had been read in the courtroom to those present. Thereafter, the videotape was marked as Quick's exhibit and offered. There was no objection by defendants, and the exhibit was received.

KOIN then filed a motion to copy the videotape at its expense. Subsequently, the trial of that case ended in verdict for all defendants. Thereafter, the trial judge denied the motion to copy.

KOIN then filed in this court its petition for a writ of mandamus commanding the trial judge to allow copying, and this court allowed an alternative writ.

Before answering, the defendant judge moved to dismiss the writ, and we denied the motion with leave to renew it by brief and argument. It has been renewed, and defendant contends that the alternative writ fails to state sufficient facts "to constitute a cause of action" because the writ

"fails to state facts establishing a clear right in relator to the relief demanded and a corresponding imperative duty adhering to defendant, and fails to state facts establishing that defendant abused his discretion."

In its brief KOIN argues that it has a common-law right to copy the videotape and also has that right under Article I, sections 8 and 10, of the Oregon Constitution and the First Amendment to the Constitution of the United States. In oral argument before this court, KOIN advanced the further argument that it had the right to copy under ORS chapter 192, sometimes called the Open Records Law.

Defendant contends that he had no duty to allow the copying.[2] Defendant points out that under ORS 34.110 a writ

---

[2] Defendant has advanced an argument that the Oregon Code of Judicial Conduct, Canon 3, section A(7) prohibits granting plaintiff's request to copy. That section provides that "[a] judge should prohibit broadcasting, televising, recording or taking photographs in the courtroom * * * during sessions of court or recesses between sessions." On its face the argument misses the mark, and we shall not consider it further.

of mandamus cannot control judicial discretion.[3] He further argues that if the writ can control an abuse of discretion, he did not abuse his discretion in this matter. He also urges that KOIN has a plain, speedy and adequate remedy in the ordinary course of law and, therefore, the writ should not issue because ORS 34.110 forbids issuance of a writ in those circumstances.[4]

■    Before turning to KOIN's arguments that the common law or the state constitution imposes a duty on the defendant to permit copying of the videotape, we should address whether ORS Chapter 192 imposes that duty. ORS 192.410 to 192.500 governs the right of persons to inspect and obtain copies of public records as defined therein. The definition section, ORS 192.410, provides:

"(1)  'Public body' includes every state officer, agency, department, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council, or agency thereof; and any other public agency of this state.

"(2)  'State agency' includes every state officer, agency, department, division, bureau, board and commission.

"(3)  'Person' includes any natural person, corporation, partnership, firm or association.

"(4)  'Public record' includes any writing containing information relating to the conduct of the public's business, prepared, owned, used or retained by a public body regardless of physical form or characteristics.

"(5)  'Writing' means handwriting, typewriting, printing, photostating, photographing and every means of recording,

---

[3] ORS 34.110 provides:

"A writ of mandamus may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise judgment, or proceed to the discharge of any of its or his functions, *it shall not control judicial discretion.* The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." (Emphasis added.)

[4] KOIN appealed to the Court of Appeals, but that court, on its own motion, has dismissed the appeal on the ground that KOIN lacked standing to take the appeal. It appears, therefore, that KOIN had no adequate remedy in the ordinary course of law by way of appeal.

including letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, magnetic or punched cards, discs, drums, or other documents."

We shall assume, *arguendo,* that this videotape is a "writing" under the statute and is of the character described in ORS 192.410(4).

That being so, under ORS 192.430 the "custodian" of that record is required to permit "inspection and examination" of the record and to permit "making memoranda or abstracts therefrom." Under ORS 192.440 the custodian must furnish reasonable opportunity to copy the record.

The question that immediately arises is whether the defendant is the custodian of the videotape. Neither party has briefed that question. Both parties seem to have assumed that the judge is the custodian. We have grave doubt that the assumption is well taken. The videotape is not a record of the court as defined in ORS 7.010 and is not a file of the court as defined in ORS 7.090. If it were either, it is clear that the videotape would be kept in the custody of the trial court administrator pursuant to ORS 7.110 and 8.225. Neither party has cited to us, and we have not found, a statute specifying who is the custodian of exhibits received on trial of a cause. Rule 6.05 of the Rules of the Multnomah County Circuit Court specify that exhibits are "retained by the Circuit Court" and that

"once in the Court's custody, shall not be removed from the Clerk's [trial court administrator's] office except by order of the Court."

It appears that either the trial court administrator or the circuit court *qua* court is the custodian and that the judge who presided over a trial in which an exhibit is received is not the custodian. Because neither party to the case at bar has raised the issue, however, we shall assume, *arguendo,* that the trial judge is the proper defendant in these proceedings, but for obvious reasons we do not decide that the judge is.

Two other questions then present themselves. It is a chicken and egg situation to determine which comes first. One goes to mandamus jurisdiction, and the other goes to the application of ORS 192.410 to 192.500 to the courts.

Mandamus does not lie where there is a plain, speedy and adequate remedy in the ordinary course of law. ORS 34.110. The legislature has provided remedies for the failure of the custodian of a public record to permit copying.

ORS 192.450 allows a person who has been denied the right to receive a copy of any public record of a state agency to petition the Attorney General for relief. If the Attorney General grants the petition, the state agency may resist the Attorney General's action only by proceedings for injunctive or declaratory relief in the Circuit Court for Marion County. If the Attorney General denies the petition, the petitioner may proceed by like means in Marion County Circuit Court.

ORS 192.460 provides that if a state agency is not involved, the person who is denied a copy may petition the district attorney of the county where the agency is located or has its administrative offices. The party who loses before the district attorney may proceed for injunctive or declaratory relief in the circuit court for that county.

ORS 192.480 provides that if the record sought to be copied is in the custody of an elected official or some other person "as to which an elected official claims the right to withhold disclosure," a petition may not be filed with the Attorney General or a district attorney. Instead, the person who is denied the right to copy "may" institute proceedings for injunctive or declaratory relief "in the *appropriate* circuit court, as specified in ORS 192.450 or 192.460." (Emphasis added.) We construe this to mean that if the elected official is a "state agency" under ORS 192.410(2), suit may be instituted in the Circuit Court for Marion County, and if the elected official is not a state agency, the suit may be commenced in the circuit court for the county where the official is located.

If ORS 192.410 to 192.500 apply to the courts of this state, as KOIN contends, the legislature has provided a plain, adequate and speedy remedy under ORS 192.450, 192.460 and 192.480 to question defendant's denial of the demand to copy. Mandamus would not lie, therefore, and the writ should be dismissed.

KOIN may be in error, however, in its assertion that ORS 192.410 to 192.500 are applicable to the courts. Originally, KOIN did not rely at all on a claim of statutory right to

copy the videotape. During oral argument, KOIN did rely on this claim. In doing so, KOIN presented the same argument as did the plaintiff-relator (Fisher) in *State ex rel Fisher Broadcasting v. Olsen,* 300 Or 412, 711 P2d 977 (1985), in which Fisher, a television broadcaster, also sought this court to order the defendant to permit copying of the same videotape. In its brief Fisher cited ORS 192.005(5) for the proposition that "Oregon's Public Records Law applies to the courts." Fisher elaborated on the contention in oral argument, as did KOIN in the case at bar.

ORS 192.005 provides:

"As used in ORS 192.005 to 192.170, unless the context requires otherwise:

"* * * * *

"(5) 'Public record' means a document, book, paper, photograph, file, sound recording or other material, such as court files, mortgage and deed records * * *.

"* * * * *

"(7) 'State agency' means any state officer, department, board, commission or court created by the Constitution or statutes of this state. * * *"

It is abundantly clear that court files and mortgage and deed records of the courts of this state are included within the definition; however, that definition is for ORS 192.005 to 192.170, a group of sections pertaining to the duty to maintain public records, not to the duty to permit inspection and copying. In ORS 192.410 to 192.500, the sections pertaining to the right to copy public records, the definitional section, ORS 192.410, does not refer to courts at all.

As first enacted in 1961, ORS 192.005(5) did not mention court records, although ORS 192.005(7) defining "public agency" did mention courts. In 1965 the section was amended to contain the reference to court files and mortgage and deed records. By Oregon Laws 1973, chapter 794, sections 1 to 11, the legislature added to ORS Chapter 192 the original version of ORS 192.410 to 192.500. ORS 192.410 has not been amended. The failure to include reference to the courts and court records such as those particularly named in ORS

192.005 tells against an application of ORS 192.410 to 192.500 to the courts.[5]

As we have already noted, if ORS 192.410 to 192.500 apply to the courts, the writ must be dismissed because those sections provide a plain, adequate and speedy remedy in the ordinary course of the law. If the sections do not apply, KOIN cannot prevail on a claim of right to copy based on those sections. We shall assume, *arguendo,* that those sections do not apply.[6]

### Common-Law Right of Access

KOIN contends that it has the right to copy the videotape by reason of a "common-law right of access to exhibits." KOIN cites no decision of this court for recognition of that asserted right;[7] rather, it cites decisions of various federal courts. Defendant contends that the videotape, although marked and received without objection as an exhibit, was not truly an exhibit and that, in any event, there is no common-law right to copy an exhibit. Defendant presents two sub-arguments. (1) There is no common-law right to copy an exhibit as distinguished from inspecting an exhibit. (2) Whether to allow copying of an exhibit is a matter within the discretion of the judge of whom the request is made, and his decision may be overturned only if he abuses his discretion.

Again, we have a chicken and egg situation. If this videotape is not an exhibit, we need not concern ourselves with whether there is a right to copy exhibits. On the other hand, if there is no common-law right to copy an exhibit, we need not concern ourselves with whether the videotape is an exhibit. If we hold that the videotape is an exhibit, we must

---

[5] It has been suggested that because Oregon Laws 1973, chapter 794, section 11(2), included among exemptions from disclosure such matters as presentence reports and probation reports to the courts, the 1973 Act must have been intended to apply to the courts. We believe that is not so because those reports are made by persons employed by the Executive Department, and if the exemption were not stated, copies of those reports might be demanded from the appropriate agency in that Department.

[6] If the statutes do apply, defendant might well argue that there is no need to address common-law rights or duties. *See Humbert v. Sellars,* 300 Or 113, 708 P2d 344 (1985). *See also Haxton and Haxton,* 299 Or 616, 705 P2d 721 (1985).

[7] We shall briefly address this court's view of the common law later in this opinion as expressed in *Bend Publishing Co. v. Haner,* 118 Or 105, 244 P 868 (1926), and *MacEwan v. Holm et al,* 226 Or 27, 359 P2d 413 (1961).

address the question of common-law right to copy. If there is a common-law right to copy, we must determine if the videotape is an exhibit. We choose to address first whether there is a common-law right to copy an exhibit introduced during trial of a civil action.[8]

Because there appears to be no decision of this court directly in point, we look elsewhere for guidance. KOIN directs us to the federal courts, ordinarily not the place in which we would seek the common law. The course of one controversy in the federal courts, although arising out of a criminal trial, presents varying decisions exploring the issue at the various levels of examination of the question.

During the trial of former Attorney General Mitchell and others in the United States District Court for the District of Columbia, the prosecutor subpoenaed tapes of conversations recorded in former President Nixon's offices. Judge Sirica examined the tapes *in camera.* Reels of tape were made containing copies of the portion of Nixon's tapes that Judge Sirica held to be relevant. Portions of those reels were published to the jury during the trial. The jurors were also provided transcripts of the portions to which they were to listen. The press and members of the public present at trial were also provided copies of the transcripts and earphones to hear the same portions that the jurors heard.

During the course of the trial, certain members of the press applied to copy those portions of the reels that had been played during trial and received in evidence. The applicants proposed to broadcast at least portions of the reels, just as does the plaintiff in the case at bar. Judge Sirica treated the application as a miscellaneous civil matter, and the Chief Judge referred it to Judge Gesell. In *United States v. Mitchell,* 386 F Supp 639 (D DC 1975), Judge Gesell first held that the First Amendment freedom of the press clause gave the applicants no greater rights than those of the public at large. He then stated:

"The question presented by the applications then boils

---

[8] Our discussion does not go to exhibits such as patented devices, copyrighted material, and trade secrets. The mere fact that one were to introduce a textbook into evidence, for example, would not give a member of the media the right to avoid the rights of the owner of the copyright.

down to a far simpler issue. Are representatives of broadcast media entitled along with the general public to aural copies of exhibits after they have been received in evidence in a criminal trial as a normal concomitant of the constitutional requirements of a public trial found in the Sixth Amendment to the Constitution?"

386 F Supp at 641.

Having just stated that the question turned on constitutional requirements of the Sixth Amendment, Judge Gesell then ignored that question. Rather, he found that "[a]s a matter of practice in this court" any applicant was entitled to a copy of any exhibit received in evidence and that "this privilege" was of long standing "in this jurisdiction" and rested on common law and traditions. He then converted "this privilege" into a "right" to a copy of an exhibit. For authority he cited *Ex parte Drawbaugh,* 2 App DC 404 (1894).[9]

In *Drawbaugh* the appellant from a decision of the Commissioner of Patents moved the appellate court to preserve the files in secrecy and to "modify" a rule of the appellate court that provided that the clerk furnish a copy of "any paper" in an appeal upon payment of legal fees therefor. As Judge Gesell correctly noted, the *Drawbaugh* opinion says in part:

> "* * * any attempt to maintain secrecy, as to the records of the court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access, and to its records, according to long established usage and practice."

2 App DC at 407-08. The quoted material and the holding of the court in *Drawbaugh* did not involve the right to copy exhibits.

Judge Gesell continued his decision by pointing out

---

[9] He also cited *United States v. Burka,* 289 A2d 376 (DC 1972), in which the issue was whether the prosecution was entitled to a transcript of the proceedings in a District of Columbia Superior Court criminal trial. Nothing before the court raised any issue as to the right of a member of the public or media to a copy of an exhibit. Judge Gesell cited *Belt v. Prince George's County Abstract Co.,* 73 Md 289, 20 A 982 (1890), in which the issue was whether the employees of an abstract company themselves had a right to copy records kept by the clerk of the court rather than paying the clerk to make copies pursuant to the clerk's statutory duty to do so. Nothing in that case presented a question such as that before Judge Gesell.

that there was "congressional, judicial and executive recognition" of the necessity of preserving material from a trial such as that proceeding before Judge Sirica.[10] The opinion continues by pronouncing that the underlying criminal proceeding before Judge Sirica was of a nature that the proceeding "must peculiarly remain open for the closest scrutiny and discussion by citizens." 386 F Supp at 642. The opinion states that this was the kind of situation in which the Sixth Amendment had its greatest thrust and concludes with a quotation from the Supreme Court of the United States that "what transpires in the courtroom is public property."[11] Judge Gesell then ordered that the applicants were entitled to copies after the trial was completed. Later, however, when it appeared that there were practical impediments to carrying out his order, he denied all applications and referred the matter back to Judge Sirica.[12]

In *United States v. Mitchell,* 397 F Supp 186 (D DC 1975), Judge Sirica decided that the tapes could not be released until the convicted defendants' appeals had been decided. The applicants appealed from that decision, contending they were entitled to immediate release.

In *United States v. Mitchell,* 551 F2d 1252 (DC Cir 1976), the Court of Appeals came to the conclusion that there was a common-law right to copy exhibits but recognized the right was not absolute. We shall not review in these pages the decisions on which the court relied in finding the common-law right, but, as was the case with respect to Judge Gesell's decision, much of the "authority" does not actually exist, in the sense that the cited decisions were not concerned with copying exhibits. The court stated, however, that the decision as to when records should be closed to the public was a matter resting within the sound discretion of the court, "subject to appellate review for abuse." 551 F2d at 1260. In a two-to-one

---

[10] He stated that none of the parties to the cause being tried before Judge Sirica objected to the release of the tapes. Whether that was important to his decision is not easily ascertainable. Of course, the defendants in the trial before the present defendant do object.

[11] We certainly have no argument with Judge Gesell's closing thoughts about the thrust of the Sixth Amendment and the right of the citizenry to find out what transpires in the courts, but that was not the issue before him.

[12] We respectfully note that the authority on which Judge Gesell relied in initially granting the applications for copies of the tapes is woefully weak.

decision, the three-judge panel reversed and remanded, finding that judicial discretion had been abused.[13]

The Supreme Court of the United States "granted certiorari to review this holding that the common-law right of access to judicial records requires the District Court to release the tapes in its custody." *Nixon v. Warner Communications, Inc.,* 435 US 589, 596, 98 S Ct 1306, 55 L Ed 2d 570 (1978). The court first noted that the parties acknowledged a common-law right of access to judicial records and differed only as to the scope and circumstances warranting restriction of the right. The court stated that the courts recognize a general right to inspect and copy public records, "including judicial records and documents." 435 US at 597. The court continued: "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." 435 US at 598. Noting that the paucity of decisions made it difficult to fix the boundaries of the right, the court stated:

"The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."

435 US at 599. The court then noted that the principal reason for Judge Sirica's decision, fairness to the defendants whose cases were on appeal, no longer obtained, for the appeals had been finally resolved. After describing the legislation and administrative rules concerning the custody and processing of the use of the tapes reposing in the Administrator of General Services, the court declined to put its decision on the basis thereof. Instead, the court said:

"We emphasize that we are addressing only the application in this case of the common-law right of access to judicial records."

435 US at 607. The court more clearly stated the precise issue as follows:

"[T]he issue presented in this case is not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these copies

---

[13] The majority noted that "it is of no small significance" that no party to the underlying case had objected to release and copying. *United States v. Mitchell,* 551 F2d 1252, 1262 (1976). That is not true in the case at bar.

of the White House tapes — to which the public has never had *physical* access — must be made available for copying."

435 US at 609. The court reviewed the arguments of former President Nixon that weighed against release of the tapes for copying and the factors which the court found weighed in favor of release. The court then discovered a "unique element" to be in existence, namely, the Presidential Recordings Act, which provided a "prescribed avenue of public access." The court found that element to tip the scales in favor of denying release.

The court stated its holding on the issue:

"Considering all the circumstances of this concededly singular case, we hold that the common-law right of access to judicial records does not authorize release of the tapes in question from the custody of the District Court."

435 US at 608.[14]

It is not absolutely clear that the court reversed the Court of Appeals because of respondents' failure to show that Judge Sirica had abused his discretion, but that is the effect of the decision and appears to be the rationale. Otherwise, why did the court even bother to discuss the matter of trial court discretion? Indeed, even Mr. Justice Stevens, in dissenting, agreed that the trial judge's ruling on a question of this kind should only be reversed for "an egregious abuse of discretion." 435 US at 614.

Each party has cited to us other cases from various federal district courts and courts of appeals that contain language favorable to the party's position here, but our examination of those cases discloses that the language is in many instances *dictum* or does not concern the right to copy exhibits. We see no reason to examine all of those cases in detail in these pages.

In *Bend Publishing Co. v. Haner,* 118 Or 105, 244 P 868 (1926), this court expressed its view of the state of the common law pertaining to the right of inspection of court records kept by the clerk of court. This court said:

---

[14] We do not profess to understand how the "common-law right of access" turns on the Presidential Recordings Act.

" 'At common law no person is entitled to inspect public records, either personally or by agent, or to make copies, abstracts, or memoranda therefrom, unless he has such an interest therein as would enable him to maintain or defend an action for which the record sought can be furnished as evidence or necessary information, and the interest of the person demanding the inspection must be direct and tangible.' 34 Cyc. 592, 593."

118 Or at 107. The court then held that plaintiff had a statutory right to inspect and examine the clerk's records for a lawful purpose.

In *MacEwan v. Holm et al,* 226 Or 27, 35, 359 P2d 413 (1961), this court expressed a somewhat similar view of the common law:

"At early common law the right to inspect public records was limited generally to those who could show a need for the information in maintaining or defending an action."

These are the only decisions of this court that we have discovered which speak to the common law with respect to inspection of public records. Neither decision is concerned with the right to copy exhibits, but if there was no greater right at common law than that described in these two decisions to inspect public records, it is extremely doubtful that this court would have held there to be a common-law right to copy exhibits. Both decisions held that certain statutes permitted the inspection of the involved records, but those statutes are not of help to KOIN in this mandamus proceeding.

Although it may be unwarranted in light of those two decisions, we shall assume that there is a common-law right in Oregon of non-parties to copy exhibits received in a civil trial. Before the trial judge, KOIN contended that the federal case law required the judge to conduct a balancing test. We agree with the *Nixon* decision (and the dissent of Justice Stevens) that the right is not absolute but is subject to the discretion of the trial judge.[15] That being so, in a proceeding in mandamus,

---

[15] Although it is not binding on KOIN, the plaintiff in the other case decided today, *State ex rel Fisher Broadcasting v. Olsen,* 300 Or 412, 711 P2d 977 (1985), candidly acknowledged in its memorandum in support of its petition for a writ of mandamus that the right of access to copy exhibits is not absolute. This was consistent with that plaintiff's position before the trial judge.

we can overrule the trial judge's decision only if we find there to have been an abuse of discretion.

■ It would be clearly an abuse of discretion if a trial judge were to deny copying without giving any reason or reasons that were sham or frivolous. That is not the case here. This trial judge stated the reasons that led him to deny copying.

During oral argument on KOIN's motion in the trial court, the trial judge, counsel for KOIN and counsel for the television broadcaster in *State ex rel Fisher Broadcasting v. Olsen, supra,* were involved in colloquy. The trial judge said:

"Now, you know that this was a perpetuation deposition which happened to be videotaped. In the usual court, at least when you and I started practicing law, a perpetuation deposition was handled in this matter [sic] [manner?]. You'd go to wherever and take the deposition. It would be transcribed and then you would read it in court. Sometimes, just for the convenience of the court reporter, the transcript was put in evidence, not as a record of the court, but it was just for the convenience of the court reporter so she didn't have to sit down and take it a second time.

"But what was in evidence was the testimony of a witness, not the document. Now, the videotape is a new concept and it is used because, as an aid to the jury. Now, there is no reason in the world why either the transcript of the testimony of this deposition or the videotape should be in evidence. There was no reason for it.

"Now distinguish that from the Nixon case or some of these other cases where the tape is the evidence.

"* * * * *

"Why they marked that as an exhibit, I'll never know. Why they didn't object to its receipt in evidence, I don't know. This is the way they proceeded. However, there was no reason in the world to mark it as an exhibit, nor was there any reason in the world to run it. And if I had not [sic] been handling the matter, you would not have any question.

"* * * * *

"What about the reasons of the parties. It was agreed by [Quick's counsel] that he would not release this, and these people [Bhagwan's counsel] expressed a desire that it not be released. Does that not have any weight?

"* * * * *

"I've been on the Circuit Bench for a little over 15 years. And I have never had a request to have an exhibit copied for use by the media. I inquired of other judges in the courthouse who are as experienced or more experienced, and they have never had the request, either. It's not saying [sic] [something?] that is done routinely, and for that reason, I am concerned and somewhat reluctant to concede to your motion.

"I sincerely believe that there is a distinction between records and files and something that is put in evidence as an exhibit. I think, surely, there is a distinction between things that are put in evidence as an exhibit which really aren't exhibits at all. They were just identified for the purpose of orderliness and not because it became an exhibit in the case.

"The testimony was presented to the jury by videotape. That was the end of it. They had then heard the testimony and they could not have retrieved from them any more than they could have the testimony of a witness retrieved from them, if they had asked for it.

"For reasons that I do not know and understand at this point, in particularly, in view of the attitude of the defendants in this case to keep this matter somewhat private, why they agreed to the admission of this as an exhibit, I don't know. But they did and so be it. That's the state of affairs.

"But anyway, I do make the distinction between exhibits and records and files. Records and files are the property of the Court. They are the property of the public. Certainly you have a right to copy any of those you wish. Things that are not the property of the Court, exhibits, for example, that would normally be returned to the owner at the conclusion of the trial or at such time as they have no more meaning as far as the case is concerned. I don't think they are Court property. I think that we're the custodians of that property, guardians of the property until such time as they have served their court purpose.

"So I think there is a valid distinction here. As you know, videotape is a new concept. We, the judges, are very happy that it's come along because cases that used to be postponed because of the unavailability of witnesses are now being tried on time, because we have what we consider to be, and the lawyers agree, a viable substitute. They can take the videotaped deposition and show it to the jury and it's almost as good, perhaps even better than the live appearance by the witness in court.

"That's something that I think we should encourage. I think if we were to say, 'Okay, if you come to court on a videotape, then ipso facto, that is a public record, and it will be released to the public and you will be put on display; your performance is not over when you complete your testimony on the witness stand. Now we have a record which we can show on TV, nationally, if we choose to do so.

"I think that would have a chilling effect on the use of videotapes for use of deposition purposes and trial purposes. And for that reason, I am very reluctant to grant your motion.

"Let me just reiterate my feelings. I think that this is not a record or a file. Therefore, there is no statutory right to this information. I think that, as custodians of this record, we should preserve it and care for it with great care. And I am reluctant to make it available for public display when that was not its intended purpose. As for what I consider the future use of videotape in court as a substitute for the appearance of witnesses, for the purpose of expediting trials, making them proceed more on time and in a more orderly way, I am not going to deviate from what I feel is the practice in the past."

The defendant trial judge did not rule without advancing any reasons for his decision. He advanced at least five reasons for his ruling: (1) The videotape was not truly an exhibit and had there been objection to its offer in evidence, he would not have admitted it. (2) Quick's counsel had agreed in advance of taking the testimony by videotape that the tape would not be disseminated outside the courtroom, and the defendants certainly objected to the copying. (3) An exhibit is not public property; it is the property of the owner. (4) To permit the copying for television broadcasting would have a chilling effect on the use of a valuable tool in moving the court's docket along. (5) There was no statutory right to copy an exhibit. His reasons are not sham or frivolous. He was entirely correct in his assertion that the videotape was not truly an exhibit at all. There is nothing to show that his belief was not sincerely held that to allow the motion would have a chilling effect on a new and efficacious means of presenting evidence, contributing to the expeditious processing of cases.[16]

---

[16] We believe it to have at least some importance that this videotape was simply the way to present testimony of a witness. The testimony was the evidence. This videotape, unlike the Watergate tapes, was not evidence.

We find no abuse of discretion and, therefore, cannot in mandamus overrule the trial judge's discretionary call.

### The Oregon Constitution

■ KOIN relies on Article I, section 10, of the Oregon Constitution, which provides in part:

"No court shall be secret, but justice shall be administered, openly and without purchase * * *."

There is not one iota of evidence in this proceeding to support a finding that the trial in which the videotape was used was "secret." KOIN's employees were admitted as were members of the public at large. Justice was administered openly and without purchase. There is nothing to the contrary in the holding in *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), on which KOIN relies.

KOIN also relies on Article I, section 8, of the Oregon Constitution, which provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; * * *."

KOIN's counsel did not directly make an argument based on that text but "adopted" the argument of Fisher made in its brief. That argument, *in toto,* was as follows:

"Oregon's 'First Amendment,' Art. I, § 8, Oregon Constitution, guarantees the right to 'print freely on *any subject whatever,'* [emphasis added]."

Apparently KOIN and Fisher believe that it is self evident that the constitutional text applies to copying an exhibit. To us it is not self evident. We have not been given any reasoning to support the claim that the constitutional text grants the right to copy.[17] That being so, we decline to rule that Article I,

---

[17] In speaking of Article I, section 8, of the Oregon Constitution, Justice Linde, concurring in *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 287, 613 P2d 23 (1980), said:

"It assures reporters and editors, along with any other observer or interested citizen, the freedom to discuss what they know, or think they know, or surmise, or advocate, without fear of sanctions beyond civil damages for private harm. *See Wheeler v. Green,* 286 Or 99, 117-119, 593 P2d 777 (1979). But this unrestrained freedom to speak, write, print, and express opinions 'on any subject whatever' is not itself an 'Open, Sesame' to public offices, or records, or other information. It does not give journalists a constitutional claim to the information which it gives them the freedom to publish. That they are left to get for themselves."

section 8, prevents the trial judge from making the ruling that he did.

## The Constitution of the United States

■    KOIN's contention that the First and Sixth Amendments, or either of them, to the Constitution of the United States gives KOIN the right to copy this videotape has already been disposed of by the Supreme Court of the United States in a decision which is binding on us in that respect. In *Nixon v. Warner Communications, Inc., supra,* the court specifically held that neither the First Amendment guarantee of freedom of the press nor the Sixth Amendment guarantee of a public trial required release and copying of the tapes. 435 US at 608-10.

The alternative writ is dismissed.