# IN THE OREGON TAX COURT

UNION PACIFIC RAILROAD COMPANY et al
*v.*
DEPARTMENT OF REVENUE
(TC 2039 and 2196)
BURLINGTON NORTHERN RAILROAD COMPANY
*v.*
DEPARTMENT OF REVENUE
(TC 2042 and 2191)

Eugene A. Ritti and Richard G. Smith, Boise, Idaho, and Donald Joe Willis, Portland, represented plaintiffs.

Dave L. Canary and James C. Wallace, Assistant Attorneys General, Salem, represented defendant.

Order issued May 8, 1986.

Petition for Writ of Mandamus denied September 30, 1986.

**CARL N. BYERS, Judge.**

These matters are before the court on defendant's motion to close a discovery hearing. The cases have been consolidated for purposes of discovery because both plaintiffs are represented by the same counsel.

During the course of a hearing on plaintiffs' motions for protective orders in discovery, defendant proferred information concerning Union Pacific. Defendant explained that it had obtained the information on the condition that it be kept confidential and was to be used in assessing Union Pacific's property only. Accordingly, defendant requested the court to exclude all persons from the courtroom other than court personnel and representatives of defendant and Union Pacific. The motion was directed particularly to representatives of Burlington Northern. Plaintiffs' counsel objected to defendant's motion on behalf of Burlington Northern, contending that all court proceedings are public and Burlington Northern has a constitutional and statutory right to attend. Counsel for plaintiffs also, unexpectedly, objected on behalf of Union

Pacific. Inasmuch as maintaining confidentiality would be for the benefit of Union Pacific, it appears that the purpose of Union Pacific's objections is to prevent defendant's use of the information in court.[1]

Plaintiffs' objections raise questions not previously considered by this court. The basic issue is what limitations, if any, can be imposed by the court on public access to court proceedings and court records. As a matter of practice and under statutory powers granted to it, the court has, in the past, closed portions of the hearings, excluded certain witnesses and sealed records. In view of plaintiffs' arguments concerning the scope of Article I, section 10, the court's policies and practices in this regard must now be reexamined. To assist the court, the parties were asked to brief a number of specific issues. The court has considered the extensive briefs and oral arguments of the parties and is now prepared to rule.

The policy that judicial proceedings are open to the public is found in all levels of our laws from the federal Constitution to the lowest trial courts. It is one of the oldest and strongest policies inhabiting our courtrooms.[2] Ancient in origin and muscled by numerous reasons, its primary validating strength is experience. Experience has shown that public knowledge is such a great safeguard of the judicial process, and of all government process, that the values of privacy must be readily sacrificed. As a result, any curious citizen may attend court and watch the divorcee weep, sit repelled by the gore of crime, or be fascinated by the internal secrets of a business in litigation. While these disclosures may be embarrassing and even harmful in some respects to the participants, the values of confidentiality or privacy are subordinated in order to achieve the benefits that public scrutiny brings.

■     Although both parties acknowledge that the policy of

---

[1] Although counsel for plaintiffs have assured the court that both plaintiffs are satisfied by joint representation and no conflicts of interest exists, the particular issue at hand raises questions in the court's mind on this point.

[2] In *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 100 S Ct 2814, 65 L Ed 2d 973 (1980), the Supreme Court pointed to the significant history of the policy and some of the strong reasons which support it. One noteworthy reason given by Justice Brennan in a concurring opinion, in addition to other reasons, is the fact that "under our system, judges are not mere umpires, but, in their own sphere, lawmakers—a coordinate branch of government." *Ibid,* at 595.

public access to judicial proceedings is found in the federal Constitution, the focus of their disagreement is on a provision in the Oregon Constitution. Plaintiffs contend that Article I, section 10, of the Oregon Constitution is stronger than the policy found in the federal Constitution or the common law and admits no exceptions. Article I, section 10, of the Oregon Constitution provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property or reputation."

Union Pacific relies upon this section and cites *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), as authority for the proposition that judicial proceedings may not be closed to the public. However, there are few rules in our known universe which are without exception and Article I, section 10, is not one of them. Because *Deiz* is so abundant in implications, it requires close examination.

*Deiz* was a mandamus proceeding brought by a newspaper to compel the court to grant its reporter access to a juvenile hearing. The court had barred the newspaper reporter under ORS 419.498(1). That statute admitted to juvenile hearings only those persons that the judge found to have a proper interest in the case or the work of the court. The Supreme Court noted that the purpose of the statute is to prevent further harm to a young person charged with a misdeed. Although the court found that the trial judge had "acted within her statutory authority," it held that barring the reporter from the hearings was invalid as contrary to Article I, section 10 (of necessity finding ORS 419.498(1) unconstitutional). In interpreting the "sweeping language" of Article I, section 10, the court found a public right, as opposed to an individual right, to public trials. Moreover, the court rejected the argument that the provision was not intended to be literally applied.

Based on these holdings, plaintiff contends that Article I, section 10, is an absolute rule. Brief reflection as to the consequences of an absolute rule indicates that this cannot be so. In fact, in *Deiz* the Supreme Court itself said:

> "Our holding, however, should not be interpreted as guaranteeing the right of public access to all judicial proceedings." *Ibid,* at 284.

The right of public access has never been absolute because in some cases it would destroy the ability of the courts to administer justice. For example, if all aspects of litigation concerning a trade secret must be made public, the court will only be able to administer injustice openly. Also, the courts have long found it necessary in some cases to exclude the public in order to protect the individual. If this were not done, in such cases the judicial process would destroy the very individuals and values the law seeks to protect.

Upon analysis, it appears that the principle of *Deiz* is this: the legislature cannot, in light of Article I, section 10, selectively determine judicial proceedings that can exclude the public. By doing so, the legislature is choosing one value over another. By enacting ORS 419.498(1), the legislature elevated its concern for the individual juvenile over the safeguards of a public trial. Faced with the "flat" language of the constitutional provision, the Supreme Court found no basis for this action. In fact, in expressly rejecting the argument that the public has no interest in juvenile proceedings, the court stated:

"But Art I, [§] 10 does not recognize distinctions between various kinds of judicial proceedings; it applies to all." (*Deiz*, at 283.)

Despite the "all" language of the court's opinion, the court itself recognized that Article I, section 10, is not an absolute rule. In pointing out that it does not guarantee public access to every judicial proceeding, the court mentioned two specific limitations.

"One obvious limitation is that jury deliberations and court conferences have been and are held in private. We are of the opinion that despite the absence of any language in Art I, § 10 expressly excluding jury deliberation from the prohibition against secret deliberations, the tradition that such proceedings be held in private was so long and so well established in 1859 that the tradition should be read into the section. [Omitting citations.] The same is true of conferences of collegial courts." (*Deiz*, at 284.)

From this it would appear that while the legislature cannot enact exceptions to the Constitution, the courts may recognize those limitations which were undoubtedly inherent in the expression of the constitutional right. In construing a constitutional provision composed of such general concepts as

"justice" and "openly," it must be acknowledged that there may be other limitations in addition to those obvious ones mentioned by the court. Inasmuch as the limitations read into the section by the Supreme Court are based on history, it is necessary to consider the history of the policy of public trials.

■ As noted by defendant in its brief, the right of public trial may be traced back to the Magna Charta. *C. v. C.*, 320 A2d 717 (Del 1974), 84 ALR 3d 581. However, it is apparent that this right has always been subject to limitations. These limitations have generally been imposed in two different circumstances. The first circumstance is where exclusion of the public is required to protect the integrity of the judicial process. In addition to the jury deliberations and conferences of collegial courts mentioned in *Deiz* are proceeedings where it is necessary to eliminate the irrelevant, maintain order in the courtroom or eliminate bias or prejudice. *Gannett Co. v. DePasquale,* 443 US 368, 99 S Ct 2898, 61 L Ed 2d 608 (1979). The second circumstance is where exclusion of the public is the only way to avoid injustice. The most common example of this circumstance is the protection of trade secrets. If litigation involving a trade secret must be conducted in public, the whole point and purpose of the litigation is frustrated and justice will be denied. *Standard & Poor's v. Commodity Exch,* 541 F Supp 1273, 69 ALR Fed 883 (1982).

■ Trade secret cases also involve constitutional considerations. Here, for example, it is recognized that Union Pacific has a significant "property interest" in information if it is found to be a "trade secret." The Fourteenth Amendment of the federal Constitution imposes procedural due process constraints on governmental actions which deprive individuals of significant liberty or property interests. Although "Oregon has no 'due process clause'," this does not alter the fact that due process is required by federal law and is to be followed by state courts. *See* Linde, *Without "Due Process" - Unconstitutional Law in Oregon,* 49 Or L Rev 125. In order to afford due process before depriving "any person of life, liberty or property," the judicial procedure must not be so onerous or "chilling" that the person will forego the process rather than reveal trade secrets that could be ruinous to the individual.

If these are less obvious limitations upon the public's right of access to judicial proceedings than those mentioned in

*Deiz,* they are, nonetheless, as ancient as the right itself and inherent in Article I, section 10. More to the point, unless such limitations are found in that provision, in many cases the court would be unable to administer justice at all, let alone openly.

Oregon is not the only jurisdiction granting to its citizens a constitutional right of public access to the courts. A very similar provision, also identified as Article I, section 10, of the Washington Constitution has been construed to recognize limitations on the right.[3] Also, after seeing only glimpses of a public right of access in the federal Constitution for a number of years, the United States Supreme Court finally found such a right in the criminal case of *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 100 S Ct 2814, 65 L Ed 2d 973 (1980).[4] This right is also subject to limitations.

> "We have no occasion here to define the circumstances in which all or parts of a criminal trial may be closed to the public, cf., e.g., 6 J. Wigmore, Evidence § 1835 (J. Chadbourn rev 1976), but our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. Just as a government may impose reasonable time, place and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, see, e.g., *Cox v. New Hampshire,* 312 US 569, 85 L Ed 1049, 61 S Ct 762, 133 ALR 1396 (1941), so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial." (*Richmond Newspapers, Inc. v. Virginia, supra,* at 65 L Ed 2d 992, n 18.)

Plaintiff contends that Oregon's provision is "stronger" than that found in the federal Constitution. The court is unaware of "any legal basis for such a construction." *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976).

---

[3] It is interesting that Article I, section 10, of the Washington Constitution reads: "Justice in all cases shall be administered openly, and without unnecessary delay." In applying this provision, the Washington Supreme Court distinguishes between "the investigatory process and the process of determining guilt or innocence" (*Seattle Times Co. v. Eberharter,* 98 Wash 2d 226, 713 P2d 710, 717 (1986)) and recognizes that "[t]here are exceptional circumstances and conditions which justify some limitations on open judicial proceedings," such as adoption and juvenile matters. (*Cohen v. Everett City Council,* 85 Wash 2d 385, 535 P2d 801, 803 (1975)).

[4] The court stated in footnote 17: "Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open."

Unless there are perceived differences in the right found in each constitution, the courts appear to be guided by the common, underlying principles. *School Dist. No. 12 v. Wasco County*, 270 Or 622, 529 P2d 386 (1975). That they are similar seems implied by the limitations recognized by the court in *Deiz* and their common historical roots. Although the right may be expressly granted in Oregon and only implied in the federal Constitution, it is the same right, seeking to protect the same interests and preserve the same values. The limitations on the right which are recognized by the U.S. Supreme Court are the same limitations that have been recognized since antiquity. They are the same limitations that must be recognized when applying Article I, section 10.

There are many expressions of the standards which must be followed in limiting the public's right of access. Although directed at a Sixth Amendment right, the statement of principle found in *Waller v. Georgia*, 467 US 39, 104 S Ct 2210, 81 L E 2d 31, 39 (1984), seems equally applicable to the public's right of access.

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."

These same standards appear to have been applied by Oregon's Court of Appeals. *State v. Romel*, 57 Or App 372, 644 P2d 643 (1982).

From these and other cases, this court understands that whole trials may not be closed when the requisite protection can be accomplished by excluding the public from only a portion. If certain information is necessarily part of the trial and public disclosure of it would cause substantial harm to a litigant, the court should first order the information to be abstracted or summarized so as to mitigate the potential harm. If that procedure is not possible, then the court may order it submitted in sealed form or excluded entirely from the trial. Limiting the public's access to the trial must be the last resort to avoid injustice. In short, the court must be diligent in its determination to keep in place as many of the safeguards of a public trial as possible. When a limitation is imposed, the

court must make a full and complete record of those proceedings. This record, although sealed to the public, would permit appellate review.

In addition to the constitutional provision, however, plaintiffs rely upon ORS 305.430 which provides:

"(1) Except as provided in subsection (2) of this section *hearings before the tax court shall be open to the public.* All proceedings in the court, except those in the small claims division, shall be reported unless waived by the parties with the consent of the court. The expense of reporting shall be paid by the state from the appropriation for the court.

"(2) If information is confidential under ORS 308.411(4) or by court order under ORS 305.420(5), and is introduced into evidence in any hearing before the tax court, the court first shall make such order or orders as are necessary to protect the confidentiality of the information." (Emphasis added.)

Plaintiffs contend that this rule also precludes the court from making any exceptions. However, in the court's view, this statute is also subject to the inherent power of the court to preserve the integrity of the judicial process or to avoid injustice. The statute cannot be stronger or less amenable to the needs of justice than the Constitution. Moreover, when this statute is considered in light of ORS 1.040, it seems clear that it must be viewed as an expression of a policy, not an absolute rule. The fact that the statute contains an express exception for confidential information under ORS 308.411 adds strength to this view. Admittedly, it is difficult to understand why the legislature made the express exception so narrow when the very same confidential information may be submitted or required of the taxpayer under other statutes.

To view the statute as being an absolute rule would also place it in direct conflict with the discovery statutes, particularly ORCP 36C. Moreover, the general rule seems to be that such statutes are not construed as absolute rules. In *Standard & Poor's v. Commodity Exch, supra,* the court there found that Federal Rule of Civil Procedure 77(b), which provides that "[a]ll trials upon the merits shall be conducted in open court and so far as convenient in a regular court room," was not absolute but could be closed to protect a trade secret. *See also State of Wisconsin ex rel Ampco Metal v. O'Neill,* 273

Wis 530, 78 NW2d 921 (1956), and other cases cited in 62 ALR 2d 501.

Acknowledging that there are exceptions to the "public trial" rule, one question in this case is whether "confidential information" creates such an exception. Oregon's tax statutes clearly reflect a strong policy of confidentiality. This is especially true with regard to the particulars or facts required by taxes on income. See, for example, ORS 314.835,[5] violation of which is made a felony crime by ORS 314.991(2). Although the policy may not be as strong in the property tax area, nevertheless, the clear intent is to limit the use of the information to that necessary for the government to raise revenue. See, for example, ORS 308.290(5).[6] With regard to

---

[5] ORS 314.835:

"Except as otherwise specifically provided by law, it shall be unlawful for the department or any officer or employe of the department to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required in the administration of ORS 310.630 to 310.690, required in the administration of any local tax pursuant to ORS 305.620, or required under a law imposing a tax upon or measured by net income. It shall be unlawful for any person or entity to whom information is disclosed or given by the department pursuant to ORS 314.840(2) or any other provision of state law to divulge or use such information for any purpose other than that specified in the provisions of law authorizing the use or disclosure. No subpoena or judicial order shall be issued compelling the department or any of its officers or employes, or any person who has acquired information pursuant to ORS 314.840(2) or any other provision of state law to divulge or make known the amount of income or any particulars set forth or disclosed in any report or return except where the taxpayer's liability for income tax is to be adjudicated by the court from which such process issues. As used in this section, 'officer,' 'employe' or 'person' includes an authorized representative of the officer, employe or person, or any former officer, employe or person, or an authorized representative of such former officer, employe or person."

[6] ORS 308.290(5):

"All returns filed under the provisions of this section and ORS 308.525, 308.720 and 308.810 shall be confidential records of the office in which such returns are filed; except that all such returns shall be available to the Department of Revenue or its representative, to the representatives of the Secretary of State or to an accountant engaged by a county under ORS 297.405 to 297.555 for the purpose of auditing the county's personal property tax assessment roll (including adjustments to returns made by the Department of Revenue), to the county tax collector or the tax collector's representative for the purpose of collecting delinquent personal property taxes, to any reviewing authority as to those returns relating to appeals by taxpayers and to the Legislative Revenue Officer or authorized representatives for the purpose of preparation of reports, estimates and analyses required by ORS 173.800 to 173.850. The Department of Revenue may exchange property tax information with the authorized agents of the Federal Government and the several states on a reciprocal basis."

plaintiffs in these cases, ORS 308.520 requires railroads to file annual statements and specifies in ORS 308.525 the contents of those statements. Such statements are made "confidential" by ORS 308.290(5).

The statutes also recognize that information which the taxpayer and the government agree is confidential shall be kept confidential by the government. ORS 308.413. The Department of Revenue, as a general policy, will treat as confidential:

> "Any information * * * voluntarily submitted to the department in confidence and not otherwise required by law to be submitted when such information should reasonably be considered confidential." OAR 150-308.290(2)(j).

This court concludes that as a general rule the constitutional right of public access to judicial proceedings must prevail over confidentiality. Further, by making Tax Court proceedings open to the public, the legislature must be viewed as expressly subordinating the confidentiality statutes (except ORS 308.411(4) and 305.420(5)) to the public trial policy. Since the very subject of the litigation is usually that which the statute has made confidential, the legislature has necessarily determined that the information shall no longer be confidential (at least to the extent necessary to the court proceedings).[7] Even where the legislature has attempted to authorize closing a trial to protect confidential information, such as in subsection (2) of ORS 305.430, the *Deiz* case holds that the constitutional right prevails. Thus an exception will be made only where the confidential information meets the constitutional standards.[8]

---

[7] Two considerations in this regard are worth noting, although their relationship to ORS 305.430 is only speculative. First, is the fact that the rules of evidence and the test of relevancy will in themselves limit the disclosures required in court. Second, litigation of tax matters generally deal with historical information as opposed to current financial information. These two considerations mitigate any embarrassment or harm that may come from a public trial.

[8] Mr. Justice Stewart, in his concurring opinion in *Richmond Newspapers, Inc. v. Virginia, supra,* at 1005, n 5, viewed two possible exceptions:

> "This is not to say that only constitutional considerations can justify such restrictions. The preservation of trade secrets, for example, might justify the exclusion of the public from at least some segments of a civil trial. And the sensibilities of a youthful prosecution witness, for example, might justify similar exclusion in a criminal trial for rape, so long as the defendant's Sixth Amendment right to a public trial were not impaired. See, e.g., *Stamicarbon, N. V. v. American Cyanamid Co.,* 506 F2d 532, 539-542 (CA2 1974)."

Determining that there are implied or inherent exceptions to Article I, section 10, answers only one part of the objections raised. There remains the question of whether discovery proceedings are to be treated any differently than other judicial proceedings. This court answers in the affirmative. Again, looking at history, it is clear that the public's right of access to judicial proceedings other than trials has been limited for a number of reasons. 52 Temp L Q 311 (1979). In *Gannett Co. v. DePasquale,* 443 US 368, 387-388, 99 S Ct 2898, 61 L Ed 2d 608, 626 (1979), the court noted that "pretrial proceedings, precisely because of the same concern for a fair trial, were never characterized by the same degree of openness as were actual trials."

The Supreme Court in *Seattle Times Co. v. Rinehart,* 467 US 20, 104 S Ct 2199, 81 L Ed 2d 17, 27 (1984), specifically ruled on the question of whether information obtained through discovery was subject to the same standards for restraint under the First Amendment as other information. In holding that discovered information could be protected upon a much lesser standard, the court stated:

"Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law [omitting citation] and, in general, they are conducted in private as a matter of modern practice."

In the instant case, this court is asked to close a discovery hearing to protect confidential information. ORCP 36C. expressly authorizes the court to make:

"[A]ny order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: * * * (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; * * *."

If the discovery proceeding must be open to the public, as plaintiffs contend, the court will be unable to accomplish the fairness and balance sought by ORCP 36C. To prevent "embarrassment" is certainly not the standard that a court can apply in closing a trial. *State v. Bowers,* 58 Or App 1, 646 P2d 1354 (1982). Accordingly, if ORCP 36C. is to have any validity, it must be on the basis that Article I, section 10, like

the First Amendment of the federal Constitution, does not apply to discovery proceedings with the same force and effect as it does to other judicial proceedings. ORCP 36C. is presumably constitutional.[9] Until determined otherwise, this court will administer discovery proceedings in accordance with such provisions.

What is true concerning the conducting of trials is likewise true of judicial records. That is, the right of the public to inspect or copy judicial records has never been an absolute right. *Bend Publishing Co. v. Haner,* 118 Or 105, 244 P 868 (1926). As indicated by the United States Supreme Court in *Nixon v. Warner Communications, Inc.,* 435 US 589, 598, 98 S Ct 1306, 55 L Ed 2d 570 (1978):

> "It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."

In ruling on this same issue in *State ex rel KOIN-TV v. Olsen,* 300 Or 392, 711 P2d 966 (1985), the Oregon Supreme Court indicated:

> "We agree with the *Nixon* decision (and the dissent of Justice Stevens) that the right is not absolute but is subject to the discretion of the trial judge."

In summary, to the extent that it is necessary for the court to be involved in discovery proceedings, the court will limit public access to those proceedings where necessary to avoid "annoyance, embarrassment, oppression, or where otherwise required to accomplish justice," all in accordance with the provisions of ORCP 36C. With regard to all other judicial proceedings, the court will entertain motions to exclude the public, seal the record, or make other exceptions to the public access policy only where the party or parties establish an overriding interest and that there is no other way to maintain the integrity of the judicial process or prevent injustice.

---

[9] Constitutional questions abound in the discovery arena. Protecting certain confidential information from disclosure to the public is supported by at least two arguments: (1) Compelling disclosure in discovery might violate one party's First Amendment right not to speak as much as a protective order violates the other's right to speak, and (2) compelling disclosure of a trade secret constitutes a taking of private property without due process in violation of the Fourteenth Amendment.

It should be understood that objections and determinations as to what information is confidential, particularly trade secrets, will ordinarily be made during the course of discovery. Rarely, if ever, should the court have to entertain motions and weigh competing interests during the course of judicial proceedings outside discovery.

For purposes of clarification, disclosure of information deemed confidential by the tax statutes generally will not constitute the "embarrassment or undue oppression" mentioned by ORCP 36C. This is because such information is usually part of the issue being litigated. Such information may become a matter of public record unless a party or parties establish that it constitutes a trade secret or is of such a nature as to cause the taxpayer substantial harm.

In accordance with the above, the court finds no basis for excluding the public from the discovery hearing. Upon resumption of the hearing, the court will give either party an opportunity to raise questions with regard to trade secrets or other circumstances justifying exclusion or other action as may be consistent with this order.

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion to exclude the public is denied.