**Richard G. PRITCHETT, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1060.**

United States Court of Veterans Appeals.

Submitted May 10, 1991.

Decided Jan. 31, 1992.

As Amended April 8, 1992.

Richard G. Pritchett, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, D.C., were on the pleadings, for appellee.

Before HOLDAWAY, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge, filed the opinion of the Court, in which HOLDAWAY, Associate Judge, concurred. STEINBERG, Associate Judge, concurring in part and dissenting in part, filed separately.

IVERS, Associate Judge:

Appellant, Richard G. Pritchett, seeks service connection for schizophrenia and non-service-connected pension. Additionally, appellant has moved to seal portions of the record. The Secretary of Veterans Affairs (Secretary) has made a motion for summary affirmance. For reasons stated herein, appellee's motion for summary affirmance is denied and appellant's motion to seal is granted in part and denied in part. The case is remanded to the Board of Veterans' Appeals (BVA) for further action consistent with this opinion.

## I. BACKGROUND

Appellant served in the Army from July 10, 1967, to April 19, 1970. R. at 1. In June, 1968, he was diagnosed as having bradycardia (slow heartbeat). R. at 9. While hospitalized for treatment, appellant presented symptoms of schizophrenia. Service medical records indicate that "he showed marked religiosity and felt that there was some connection between God and his vagus nerve". Id. (The vagus nerve is one of many nerves located in the back of the head. It "is the longest of the cranial nerves and has the most extensive distribution, passing through the neck and thorax into the abdomen." Henry Gray, Anatomy of the Human Body 1181 (C. Clemente 30th ed. 1985)). Appellant was "rapidly evacuated" to a local hospital for further treatment. After evaluation, the initial diagnosis of schizophrenia was changed to "situational maladjustment, acute, moderate, manifested by hyper-religiosity and over-concern with his physical well being." R. at 7. The diagnosis further indicated that the condition occurred in the line of duty. Id. There are no further references to an in-service psychiatric disorder in the record.

Appellant was admitted to a local hospital in April, 1980 for weight loss, due to fasting, and prolonged periods of silence. He did not respond to treatment and subsequently was transferred to another hospital. Appellant made a brief improvement in that hospital but after his discharge, he refused to follow up with outpatient therapy, stopped taking his medication, resumed his fast and became progressively more mute. R. at 47. In June, 1980, he was re-admitted at the request of his family. He was diagnosed as having catatonic schizophrenia. Although a conservator was appointed for a brief period of time (R. at 46–50), appellant was later released, but was hospitalized again in August, 1980, and conservatorship proceedings were reinstituted. He was released one month later, but the conservatorship remained in effect until June, 1981. At that time, appellant had been working steadily for eight months, had continued his therapy, and was not taking any medication. R. at 55–58.

Appellant managed to continue working for approximately two more years, but had refused to continue to attend therapy sessions. Private medical records reflect that certain of appellant's symptoms became more pronounced. Appellant left his job in approximately 1983. He became more reclusive and delusional. His wife and mother commenced conservatorship proceedings in September 1984 (R. at 59–69) and caused appellant to be hospitalized for one month.

In 1986, appellant began receiving treatment from a private physician. That physician recommended that appellant's conservatorship be continued to ensure that he take his medication and continue with treatment. R. at 68–69. He also concurred in the diagnosis of chronic paranoid schizophrenia.

In October, 1988, appellant filed a claim for service-connected disability benefits for his psychiatric condition and for bradycardia with the Veterans' Administration (now Department of Veterans Affairs) (VA). R. at 27. In his statement in support of his claim, appellant stated that he thought that

he had previously removed some of his service medical records from his file. He also requested that the VA obtain medical records from Letterman Hospital where he was hospitalized for psychiatric evaluation and treatment while in service. The VA denied appellant's claim on the grounds that appellant was diagnosed as suffering from acute situational maladjustment and bradycardia (without heart disease) while in service, neither of which are compensable. The rating board considered only appellant's service medical records. R. at 27, 28, 32. A Notice of Disagreement was filed on appellant's behalf providing the VA with the name and address of appellant's treating psychiatrist. R. at 29.

Appellant's substantive appeal set forth, in elaborate detail, the series of events which occurred while appellant was in the service, allegedly causing his psychiatric condition. The VA obtained medical records from private hospitals and conducted its own psychiatric exam. Attached to the psychiatric report were appellant's written responses to questions on the VA form regarding history of illness and present complaints. The report does not refer to or attempt to reconcile appellant's written statements regarding the onset of his illness. Although the VA physician concluded that appellant suffered from chronic paranoid schizophrenia, he did not offer an opinion as to whether the illness was present while appellant was in the service.

In July 1989, appellant submitted documents pertaining to his three conservatorship proceedings. R. at 46–69. These documents contain a letter from one of appellant's private physicians to the judge presiding over the conservatorship proceedings which states that appellant's "psychiatric history dates back 12 years when the veteran was briefly hospitalized psychiatrically." R. at 47. The rating board denied appellant's reopened claim, stating that "in absence of evidence of a psychiatric disorder during the ten-year period following service separation, it would be speculative to conclude that the situational maladjustment diagnosed in service was the onset of the currently diagnosed schizophrenia." R. at 70–71.

Appellant then submitted a "second appeal statement" with various correspondence attached thereto. However, the supplemental statement of the case does not reflect that this evidence was received or reviewed by the Regional Office. R. at 75–77. Appellant then submitted an eight page reply, with attachments, to the supplemental statement of the case which delineated each and every point with which appellant disagreed. Appellant's representative also submitted a statement which alleged that bradycardia was a symptom of schizophrenia and that appellant should be given the benefit of the doubt on the issue of service connection. R. at 78–81.

On June 11, 1990, the BVA denied appellant's claim on the grounds that 1) "a chronic psychiatric disorder was not demonstrated in service and a psychosis was not demonstrated within one year of separation from service"; and 2) "a chronic pathological process manifested by bradycardia was not shown in service or within the first post service year." *Richard G. Pritchett,* BVA 90–18990, at 4 (Jun. 11, 1990).

Appellant has appealed that decision to this Court. This Court has jurisdiction to hear the appeal pursuant to 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

### A. Motion to Seal Portions of the Record

Appellant has moved to seal portions of the record. The entire record is temporarily under seal. In his statement in support of his motion, appellant alleges that "much of the material I submitted to the VA is very personal and private" and that the knowledge that the information was a matter of public record would cause him "great emotional distress, and further frustration, disgrace and humiliation." Appellant further states:

I would never have filed my case if I had believed that the record would not be sealed. Much of the material I submitted to the VA is very personal and

private and I would be very upset to know that anyone could look at it or have copies made. There are hospital reports and doctor statements on my psychiatric condition and pages of statements made by myself talking about my problems since the illness first occurred in the service in Feb–Mar of '68. I told the VA things that I had never told anyone—things I am only starting to tell my doctor. They are personal and private things that I feel the public has no right to see.

Appellant's Statement at 1. Appellee has not opposed the motion.

■ Appellant's motion to seal in this case places the Court squarely in the middle of a dilemma. We are faced with two extreme points on a continuum of public access to documents. At the one extreme, we have the requirement that all decisions of the Court and all briefs, motions, documents, and exhibits received by the Court shall be available to the public. This requirement is set forth at 38 U.S.C. § 7268(a) (formerly § 4068(a)) and is in keeping with the general rule governing Federal courts as set forth in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), *Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289 (9th Cir. 1986) and a long line of cases from as early as 1894, *Ex parte Drawbaugh*, 2 App.D.C. 404 (1894). At the other extreme, we have an administrative system that has, for the most part, been totally protective of veterans' records. The requirement of confidentiality of VA records is set forth at 38 U.S.C. § 5701(a), (b) (formerly § 3301(a), (b)) and further defined by regulations at 38 C.F.R. §§ 1.513, 1.513(a), 1.514, 1.514(a), 1.554, 1.554(a)(6), (7) (1991). This Court has a duty to conduct its business with at least equal regard for each requirement. As a Court, we cannot, as the dissent seems to suggest, ignore or treat lightly, Congress' direction at 38 U.S.C. § 7268(a) that our decisions and all briefs, motions, documents, and exhibits received by the Court be available to the public. Granted, Congress did give the Court the authority to "make any provision which is necessary to

prevent the disclosure of confidential information, including a provision that any such document or information be placed under seal to be opened only as directed by the Court." 38 U.S.C. § 7268(b)(1). This does not, however, give us the authority to broadly deny public access nor does it provide specific guidance with respect to the applicable definition of "confidential information." The dissent points out that, at the time Congress passed the Veterans' Judicial Review Act (VJRA), there existed a definition of "confidential information" at 38 U.S.C. § 5701. This definition, however, is extremely broad and, in fact, defines the requirement at only one extreme of our continuum. 38 U.S.C. § 5701(a) states:

All files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the [VA] and the names and addresses of present or former members of the Armed Forces, and their dependents, in the possession of the [VA] shall be confidential and privileged, and no disclosure thereof shall be made except as provided in this section.

Because we are a Federal court of record and not an administrative agency, we cannot and should not be bound by the definitions which govern an administrative agency like the VA with regard to the treatment of confidential information.

In attempting to establish a position on our continuum, this Court could take the easy route, simply adopt one extreme or the other, hold fast to our position, and be done with it. However, to do so would be to ignore our obligation to both the public and to our veteran appellants. Thus, we must begin to define what actions can or should be taken by this Court in addressing motions, such as appellant's, to seal the record or portions of the record in a case before us.

As suggested earlier, we are not being asked to go about this task in a vacuum. Guidance in this area abounds. As a starting point, we must look to our own opinions and rules. In that regard, we have the recently decided case of *Stam v. Derwinski*, 1 Vet.App. 317 (1991). That case, as so

ably pointed out by the dissent, relies on an analogy to Fed.R.Civ.P. 26(c), a discovery rule as a first step by this Court in dealing with the complex issue of public access. The "good cause" standard adopted therein was applied to the specific facts of that case and arrived at a result based on that application. Here, we will further analyze the issue and explore more fully our responsibility in balancing the interests represented by the extremes on our continuum of public access to court records. While we do not feel that *Stam* provides more than a starting point in examining this issue, we disagree with the dissents' apparent proposed "bright-line rule" that records be sealed simply upon a request by the appellant and an allegation of embarrassment, humiliation, or hesitancy to pursue a claim. More is required in order to properly balance the conflicting demands regarding access to court records.

■ For this Court to meet its obligations to the general public and to our veteran appellants with regard to public access to its records, we must conduct an examination of each case and each document or group of documents for which protection is sought and, in so doing, balance the conflicting interests presented. While the extremes on our continuum are defined by statute and regulation, we are drawn to the common law in our search.

In balancing these interests, we must begin from the position that our records are, by statute, to be "public records open to the inspection of the public." 38 U.S.C. § 7268. That being the case, we must then determine whether or not appellant has established a basis upon which we can rely to deny public access. The Second Circuit, in *In re National Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir.1980) (footnotes omitted), set forth a starting point when it stated:

When physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial, only the most compelling circumstances

should prevent contemporaneous public access to it.

From that point, we must begin to examine and "balance" those factors submitted by appellant in seeking to seal the record to determine their compelling nature or lack thereof. The Supreme Court in *Nixon v. Warner Communications*, 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978), established this starting point when it determined that there is a presumption "however gauged" in favor of access. *Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1294 (9th Cir.1986). "As a general rule, common law, statutory law and the United States Constitution support the proposition that official records of all courts, shall be open and available to the public for inspection and copying." *Willie Nelson Music Company v. Commissioner of Internal Revenue*, 85 T.C. 914, 917 (1985), quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). Although the *Nelson* case involved a motion to seal in a tax case, this general principle is applicable to virtually every type of case. *See Ex parte Drawbaugh*, 2 App.D.C. 404, 406 (1894). In *Nelson*, the Court discussed the factors that must be weighed when deciding a motion to seal. The Court stated that the interests of the public are presumptively paramount as against those advanced by the parties but this presumptive right to access may be rebutted by a showing that there are countervailing interests sufficient to outweigh the public interest in access. Nothing here should be construed to signal that our consideration of the issue of public access has, or should, rise to the level of a constitutional issue. We are dealing here with an exercise of this Court's inherent "supervisory power over its own records and files." *Nixon*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312. It is the duty of the Court to weigh and balance the various factors involved here and arrive at a resolution of the matter that, in each case, adequately addresses the needs of the parties involved—that best balances the competing interests.

To arrive at such a resolution, we have an array of options available and we should explore each of them. We first have the option of denying appellant's motion and proceeding with the disposition of this case with the full record available to the Court and to the public. Appellant has stated reasons sufficiently compelling to render this option inappropriate.

A second option available to us is to seal the entire record as urged by the dissent. While this option has some attraction in terms of ease of administration, it fails to adequately weigh and balance the competing interests in this case. Thus this option is not suitable for application in this case.

A third option available to us is to direct that certain material be sealed, but that the balance of the record remain open to public access, thus addressing to some extent, each of the competing interests here. In this regard, appellant has supplied the Court with a specific listing of portions of the record and has asked that we seal them. We will address those requests, *seriatim* and dispense with each in a separate order. For purposes of this opinion, however, suffice it to say that we have ordered certain limited portions of the record placed under seal so as to be accessible only to the Court and the parties for purposes of this case.

A fourth option available to the Court is to remove certain material from the Court's record and return it to the Secretary for inclusion in the veteran's VA record, subject to the protections afforded individual veterans' records. Here again, we have chosen to exercise this option and, by separate order, as previously described, we have instructed the Clerk of the Court to remove certain items from the record, return them to the Secretary for reincorporation in appellant's VA file, and further, directed that the record on appeal be renumbered accordingly. As a general rule, this option should be exercised by the parties pursuant to Rules 10 and 48 before the record is filed. Here, however, where the parties have not arrived at agreement before the record reaches us, and where appellant seeks to have the record, or portions thereof, sealed, we will undertake the task.

Certain documents in this case which appellant seeks to have sealed have been part of other proceedings before other courts and there is nothing of record to indicate that they are not accessible to the public in connection with those proceedings. Thus, those documents will not be placed under seal in this Court. Those documents are more specifically addressed in the order referred to above.

While the options discussed here may not be exhaustive of the various possibilities regarding access to this Court's records, they are, at a minimum, illustrative of what is required in balancing the various competing interests present when we are asked to seal a record. For this Court to perform a less than complete analysis of the request of an appellant to seal the record and of the records involved would be to shirk our duty to protect the interests of both the public and veteran appellants.

B. Merits of Appellant's Appeal

Appellant alleges that his written statements regarding the onset of his psychiatric disability were erroneously discredited. Br. at 2. He specifically refers to information contained in two of his substantive appeals. In the first substantive appeal, appellant describes, in great detail, the nature of his disability and its effect on his thoughts, actions, and well-being. Appellant further explains that he attempted to control his disability after he was originally hospitalized in order to avoid discharge.

In another substantive appeal appellant reiterates that while hospitalized he tried to control his symptoms in order to avoid discharge and/or further hospitalization. He alleges this change in behavior resulted in a change in diagnosis from schizophrenia to acute situational maladjustment. In response, the Secretary argues that there was no evidence of psychosis or psychiatric disease in service and that appellant's current condition did not become manifest to a degree of ten percent within one year of discharge. Motion at 4–5. Appellee cites the fact that appellant was not hospitalized until 1980 to support its argument.

■ However, neither the BVA nor appellee's motion address appellant's statements regarding the onset of his psychiatric disabilities. The Statement of the Case, Supplemental Statement of the Case, and list of evidence reviewed do not even refer to any of the written material submitted by appellant. Since these statements are the only evidence of record which could demonstrate that appellant's psychiatric disability had its onset in service and continued after discharge, it is incumbent upon the Regional Office and the BVA to thoroughly review this evidence and evaluate its credibility. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–170 (1991). We find that the BVA decision lacks an analysis of the credibility or probative value of the evidence submitted by or on behalf of appellant in support of his claim.

The BVA decision also fails to address the opinions from appellant's treating psychiatrists. Although it refers to letters from both doctors in its recitation of evidence reviewed, it does not discuss the credibility of these medical statements regarding the onset of appellant's disability. Those statements provide yet another piece of evidence which could establish service connection or at least place the evidence in equipoise which would give the veteran the benefit of the doubt under 38 U.S.C. § 5107(b) (formerly § 3007(b)). Again, in the absence of clearly stated reasons or bases, to include an assessment of credibility by the BVA, this Court is unable to determine whether the BVA's ultimate conclusions were correct. *See Sammarco v. Derwinski*, 1 Vet.App. 111, 113–114 (1991); *Hatlestad*, 1 Vet.App. at 170.

It should also be noted that appellant and his representative requested, on at least two separate occasions, that the VA obtain recent medical reports from appellant's current psychiatrist. R. at 34, 80. The record contains only one such report, dated November 1986. R. at 103–104. Given the nature of this case, it would seem appropriate for the VA to solicit an opinion concerning the issue of service connection from appellant's treating psychiatrist. At a minimum, the VA has a duty to obtain existing medical records which would assist appellant in developing his claim. *See Littke v. Derwinski*, 1 Vet.App. 90 (1990); 38 U.S.C. § 5107(a) (formerly § 3007(a)); 38 C.F.R. § 3.103(a) (1991).

Lastly, the BVA failed to address the statement by appellant's representative that bradycardia could be a symptom of schizophrenia. R. at 152. Before the BVA, the representative referred to a medical treatise which discusses this issue. However, the BVA declined to address the issue. This also violates our holdings in *Gilbert, Sammarco,* and *Hatlestad.*

The Secretary argues in his motion for summary affirmance that summary disposition is appropriate because "appellant has not demonstrated that the BVA committed error in its findings of fact, conclusions of law, procedural processes, application of the benefit-of-the-doubt doctrine, or articulation of reasons or bases." Motion at 10. However, because the incomplete nature of the record below does not permit proper review by this Court, we remand this case to the BVA for further action consistent with this opinion. The BVA is further ordered to review appellant's claim to determine whether he is eligible for non-service-connected pension by reason of unemployability. *See Ferraro v. Derwinski*, 1 Vet. App. 326, 333 (1991); 38 C.F.R. § 3.151(a) (1991).

### III. CONCLUSION

Therefore, appellant's motion to seal portions of the record is GRANTED in part and DENIED in part. The Secretary's motion for summary affirmance is DENIED. The decision of the Board is VACATED and the case is REMANDED to the BVA for further development and reconsideration of all relevant evidence, issues, and regulations in a manner consistent with this opinion.

STEINBERG, Associate Judge, concurring in part and dissenting in part:

I agree with the substance of the Court's opinion, remanding the matter to the Board of Veterans' Appeals (BVA) in order to

correct numerous errors which the Court's opinion very ably identifies. However, on the sealing issue, I respectfully dissent in part from the Court's disposition. I would seal the entire record in this case and re-caption the case using an encoded identifier (such as "GH").

This Court has, in *Stam v. Derwinski*, 1 Vet.App. 317 (1991), articulated a standard for deciding sealing motions. That standard was based partly on an inapposite analogy between this Court's "role" and that of a federal district court considering a motion for a protective order under Fed. R.Civ.P. 26(c) and partly on what seems to me to have been an incomplete analysis of the common law standard. Apparently recognizing that, the majority opinion here does not apply the *Stam* standard or embrace its reasoning. However, although the majority purports to be balancing "the conflicting demands regarding access to Court records" (*ante*, at 120; *see also ante*, at 120–21), the opinion provides no discernable standard against which to balance the competing interests. The law under title 38, U.S.Code, is left in a state of flux, and the outcome of a particular sealing motion in the future is thus unpredictable. Although the law is seldom fully predictable, the continuation of uncertainty in the area of confidentiality of this Court's records, particularly when sensitive medical treatment records are involved, has much potential for prejudice to claimants in future benefits proceedings or treatment processes, as discussed in detail below.

## I. RULE 26(c) PRESUMPTION OF PUBLIC ACCESS TO DISCOVERY

The Court's opinion in *Stam* analogized this Court's role when an appellant seeks to seal the record before the Court to that of a federal district court when a party seeks a protective order under the "good cause" standard of Rule 26(c).[1] The "good cause" standard was defined in *Stam* as requiring the articulation of "specific facts showing 'clearly defined and serious injury' ". *Id.* at 320 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 253 (1987)).

However, this Court neither presides over civil discovery matters between private parties, nor operates under rules comparable to the Federal Rules of Civil Procedure. Since Rule 26 applies only to the **discovery** process, the Rule 26(c) "good cause" standard required of parties before documents may be sealed by a district court has no application to matters coming before this Court. Moreover, the federal courts construing Rule 26(c) have held that it does not apply to the sealing of material obtained outside of the discovery process in the case in which the protective order is sought.[2] Hence, I find no basis for *Stam's* analogy to, let alone reliance on, Rule 26(c)'s "good cause" standard in determining the standard that appellants must meet when seeking to seal records in this Court.

Rather, guidance beyond the statutory provisions directly applicable to this Court should be drawn only from the common

---

**1.** Fed.R.Civ.P. 26, entitled "General Provisions Governing Discovery", provides in pertinent part in subsection (c) entitled "Protective Orders":

> Upon motion by a party or by the person from whom discovery is sought and **for good cause** shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Fed.R.Civ.P. 26(c) (emphasis added).

**2.** *See, e.g., Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940, 945 (2d Cir.1983)

(Rule 26(c) does not authorize disclosure of materials not obtained through discovery process); *Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1080 (9th Cir.1988) (citing *Bridge* ); *Mary Kay Ash v. Commissioner*, 96 T.C. 459 (1991) ("cases construing Rule 26(c) ... uniformly hold that [it] provides no authority for the issuance of PROTECTIVE ORDERS to regulate the use of information or documents obtained through means other than discovery in the proceedings before the Court"); 4 J. Moore, J. Lucas, and G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.78 at 26–503, 26–504 ("provision for protective orders in Rule 26(c) is plainly limited in its application to protection from abuses flowing from the employment of the discovery rules").

law standard applicable to the sealing of court papers and records. On this much, I believe the majority opinion and this opinion are in agreement. The majority opinion, for example, although not articulating a standard, does not purport to be applying the *Stam* "good cause" standard or the *Avirgan v. Hull* "clearly defined and serious injury" criterion.

## II. THE COMMON LAW

Putting *Stam's* reference to Rule 26(c) aside, its basic premise and that of the majority opinion here appear to be that the statutory mandate of this court with regard to public access to judicial records merely codifies the existing common law presumption. *Stam*, 1 Vet.App. at 319. However, neither the Court's analysis in *Stam* nor the majority opinion here analyzes how the common law should be applied in a way that will be consistent with **both** the statutory mandate as to the records of this Court, specifically 38 U.S.C. § 7268(a) and (b) (formerly § 4068), **and** this Court's underlying purpose, discussed in parts III and IV below.

As to the common law right of public access to judicial records, in its ruling in *Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court left the sealing decision to the discretion of the trial court to be exercised in light of the relevant facts and circumstances.[3] In the ensuing efforts to fill the vacuum left by the *Nixon* case, much tension has developed among the federal courts of appeals in fashioning standards by which to make sealing determinations. In the case relied upon by the Court in *Stam* for its statement of the standard under which the common law presumption of public access would give way, the Ninth Circuit discussed the disparate standards adopted by various circuits. *Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1293–94 (9th Cir.1986).[4] In so doing, the Ninth Circuit distilled an area of dispute in the law and referred to what it found to be extreme tests at either end of the spectrum "that contain built-in biases for or against disclosure." *Valley Broadcasting*, 798 F.2d at 1293. The test biased **for** public access was represented by the Second Circuit's position:

> When physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial, **only the most compelling circumstances should prevent contemporaneous public access to it.**

*In re National Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir.1980) (footnotes omitted) (emphasis added).

The bias **against** access was embodied in the approach of the Fifth Circuit in *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir.1981). There, the Fifth Circuit balanced the competing interests—the "nonconstitutional right of physical access to courtroom exhibits and a defendant's due process right to a fair trial". 654 F.2d at 432. It then declared that it disagreed with the standards employed by the Second

---

3. *See infra* note 7.

4. Although *Valley Broadcasting* arose in the context of a criminal trial, it is no less applicable to civil matters. The court there did not distinguish between access to civil and criminal documents. Moreover, although *Nixon* involved public access to evidence admitted in a criminal trial, it is uniformly cited in civil cases addressing the common law right of public access to judicial records. *See, e.g., Bank of America Nat. Trust v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir.1986) ("common law presumption of access encompasses as well all 'civil trials and records' "); *Brown & Williamson Tobacco Corp.*

*v. FTC*, 710 F.2d 1165, 1178 (6th Cir.1983) (same), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir.1984) ("[The] common law right of access to judicial proceedings and records usually has been considered by the Supreme Court in connection with criminal trials and proceedings.... However, an examination of the authority on which the Supreme Court relied in these cases reveals that the public's right of access to civil trials and records is as well established as that of criminal proceedings and records.").

and D.C. Circuits [5] in similar cases involving access in the context of an FBI operation:

> Our fundamental difference with both these cases lies in their holdings that 'only the most compelling circumstances' should prevent access to these tapes and that the party opposing access must demonstrate that 'justice so requires'.... In our judgment, the opinion in *Nixon v. Warner Communications*, offers no basis from which one can derive the overpowering presumption in favor of access discovered by the Second and District of Columbia Circuits. The Supreme Court there neither drafted explicit limits nor assigned specific weight to this common law right of access.... It did not find the existence of the right conclusive.... Rather, we read the Court's pronouncements as recognizing that a number of factors may militate against public access. In erecting such stout barriers against those opposing access and in limiting the exercise of the trial court's discretion, our fellow circuits have created standards more appropriate for protection of constitutional than of common law rights.

*Belo Broadcasting*, 654 F.2d at 433–434 (footnotes omitted).[6]

Despite the Ninth Circuit's characterization in *Valley Broadcasting*, 798 F.2d at 1293, of the Fifth Circuit's *Belo* balancing standard as rather extreme, both the Third and Fourth Circuits generally have seemed to endorse a balancing approach, similar to the Fifth Circuit's, between competing interests.[7]

Between the two poles, as characterized in *Valley Broadcasting*, the Ninth Circuit chose "[t]he middle-ground stance", under which a " 'strong presumption' " exists "in favor of access, to be overcome only 'on the basis of articulated facts known to the court, not on the basis of unsupported hypothesis or conjecture.' " *Valley Broadcasting*, 798 F.2d at 1293 (quoting *Nixon* and *United States v. Edwards (In re Video–Indiana, Inc.)*, 672 F.2d 1289 (7th Cir. 1982). This seems to have been the standard adopted by the Court in *Stam*. But, several problems emerge from *Stam's* reliance on *Valley Broadcasting* for the standard which supplied the basis of the Court's holding.

First, in *Stam*, the Court cited *Valley Broadcasting* for the proposition that the moving party must demonstrate a "cognizable privacy interest, which has been described by the courts as being based on articulable facts rather than on unsupported hypothesis or conjecture" and which is of "sufficient significance to overcome the presumption of public access to judicial records." *Stam*, 1 Vet.App. at 318, 320. However, nowhere did *Valley Broadcasting* require that "a cognizable privacy interest" be demonstrated. It required only that "articulable facts known to the court" serve as the basis for a request. *Valley Broadcasting*, 798 F.2d at 1293. That case had little to do with "privacy interests". Rather, the sealing issue arose because of the district court's fears of administrative inconvenience caused by access, problems in impaneling an unbiased jury, and difficulty in keeping a jury unbiased in the face

---

**5.** The D.C. Circuit case was *In re Application of Nat'l Broadcasting Co. (United States v. Jenrette)*, 653 F.2d 609 (D.C.Cir.1981).

**6.** The reference in *Belo Broadcasting* above to protection of constitutional rights is significant, since neither *Nixon* nor any other case has established an absolute constitutional right of access to court materials. In addition, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984), the Supreme Court held, in addressing Fed.R.Civ.P. 26(c), which relates only to civil discovery, that its provision for protective orders as to material produced in discovery does not require "heightened First Amendment scrutiny".

**7.** *See Bank of America Nat. Trust v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir.1986) ("strong common law presumption of access must be balanced against the factors militating against access"); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir.1988) (quoting *Bank of America* ) (" 'the strong common law presumption of access must be balanced against the factors militating against access' "); *Stone v. Univ. of Md. Medical System Corp.*, 855 F.2d 178, 180 (4th Cir.1988) ("common law presumption of access [to judicial records] may be overcome if competing interests outweigh the interest in access").

of trial publicity. *Valley Broadcasting,* 798 F.2d at 1294–95.

Second, the *Stam* opinion did not explain why it settled on a standard in which appellants must establish "a cognizable privacy interest of sufficient significance to overcome the presumption". *Id.* at 318, 320. The Supreme Court in *Nixon* had declined to delineate such a precise standard,[8] and the courts of appeals, as noted above, have adopted a wide variety of approaches to the issue.[9]

Although I believe the majority opinion here has correctly eschewed the standards espoused in *Stam* in reliance on *Valley Broadcasting,* the majority provides no explicit guidance for the resolution of future sealing motions. Rather, the appellant's reasons here are found "sufficiently compelling" to warrant sealing or removing from the record almost all of the records he seeks to withhold from the public. *Ante,* at 120–21. Drawing instruction from a Tax Court decision, the majority seems to hold that the "presumptively paramount" "interests of the public" in access are outweighed by the appellant's "showing that there are countervailing interests sufficient to outweigh the public interest in access." *Ibid.* The only showing that the appellant has made, however, is "his allegation of embarrassment, humiliation, or hesitancy to pursue a claim" that the majority states is not enough "to properly balance the conflicting demands regarding access to court records." *Ante,* at 120.

Applying the old adage to watch what the Court does, not what it says, I conclude that the majority and I are basically in agreement that in this Court an appellant's facially reasonable allegation that embarrassment or humiliation are likely to result from public release of previously confidential medical records is a sufficient showing by an appellant to overcome the public's interest in access to those judicial records. *Cf. United States Department of State v. Ray,* — U.S. —, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (Haitian interviewees' concern about embarrassment in their so-

8. *Nixon* stated: "It is uncontested ... that the right to inspect and copy judicial records is not absolute". In cases in which a common law right of public access has been recognized, however, the courts have "recognized ... that the decision as to access is one best left to the sound discretion of the trial court ... to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312–13.

9. In many of the cases cited in this opinion (text and footnotes) where courts have decided in favor of the public's right of access to judicial records, parties challenged the sealing orders for the purpose of gaining access to the records to disseminate the information to the public in light of the significant public interest surrounding the underlying issue. *See, e.g., Nixon v. Warner Communications,* 435 U.S. at 602, 98 S.Ct. at 1314 (common law right of access not decisive, because issue of access to Nixon tapes regulated by Presidential Recordings Act, but if access were decided according to the common law, "the incremental gain in public understanding of an immensely important historical occurrence" would weigh in the balance, as *would the risk that courts could become part-*ners in using judicial records to gratify private spite or promote public scandal); *Publicker Industries, Inc. v. Cohen,* 733 F.2d at 1074 ("presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices

are not overcome") *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d at 1180 (Public Citizen Health Research Group urged court to lift or modify seal placed by district court on administrative record and all other documents filed by FTC and court did so, stating, "common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know.... [The information] potentially involves the health of citizens who have an interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market"); *In re Application of Nat'l Broadcasting Co.,* 635 F.2d at 952 (regarding right of television station to copy and televise videotapes entered into evidence in first "Abscam" case, "there remains a legitimate and important interest in affording members of the public their own opportunity to see and hear evidence that records the activities of a member of Congress and local elected officials, as well as agents of the Federal Bureau of Investigation"). In the instant case, no individual, member of the media, or public interest organization—or the Department of Veterans Affairs for that matter—has challenged the motion to seal; nor does an issue of significant public interest reside in the documents at issue. Challenges to motions to seal and underlying issues of significant public interest are not likely to arise generally in veterans benefits appeals. This factor alone suggests caution in adopting common law standards crafted in cases where there was a contest over the sealing question.

cial and community relationships if State Department interviews were made public was found to be a sufficiently significant privacy interest to justify Government withholding identifying information, under exemption 6 of the Freedom of Information Act (FOIA), from 17 of 25 documents produced pursuant to FOIA request). Where we seem to disagree, then, is on how we reach that conclusion and what should be the remedy. If I am wrong as to the meaning of the majority opinion, future appellants are left totally in the dark as to the justification they must marshal in seeking to restrict public access in their cases. In any event, this is an area that I believe requires a bright-line rule stated with clarity, *see* the discussion in part IV, below, and the Court's opinion unfortunately falls far short in that regard.

## III. INTERACTION BETWEEN THE COMMON LAW AND THE STATUTORY SCHEME

In the Veterans' Judicial Review Act (VJRA), Congress provided this Court with broad authority to "prevent the disclosure of confidential information" in its judicial records. 38 U.S.C. § 7268(b)(1) (formerly § 4068); VJRA, Pub.L. No. 100–687, § 301(a); 102 Stat. 4105, 4117 (1988). In doing so, Congress did not specify any special standard or require any special showing regarding the sealing of a record. Section 7268 seems to conform to the common law in so far as setting out a presumption for public access. *Ante,* at 119; *See Stam,* 1 Vet.App. at 319. But I question the applicability to our statutory scheme of any further common law analysis.

As have the district and circuit courts which have sought to refine the contours of the access right, Congress in the VJRA enacted 38 U.S.C. § 7268 to provide for situations where a claimant's interest in confidentiality may overcome the presumption:

> (a) Except as provided in subsection (b) of this section, all decisions of the Court of Veterans Appeals and all briefs, motions, documents, and exhibits re-

ceived by the Court (including a transcript of the hearings) shall be public records open to the inspection of the public.

> (b)(1) **The Court may make any provision which is necessary to prevent the disclosure of confidential information,** including a provision that any such document or information be placed under seal to be opened only as directed by the Court.

(Emphasis added.)

In *Stam,* the Court made only passing reference to this Court's statutory mandate with regard to accessibility of Court records. *Id.* at 319. The majority here remedies that omission by recognizing the Court's broad statutory discretion to "make **any** provision which is necessary to prevent the disclosure of confidential information". 38 U.S.C. § 7268(b) (emphasis added); *Ante,* at 119.

Although I agree that this Court must, as do the district courts, engage in a balancing process, the nature of this Court as an Article I court must inevitably shape the standards we develop to articulate the competing factors. We should be guided by the special statutory mandate defining the Court's role, and by the nature of litigation here in which an appellant reaches the first judicial step only after having followed a long progression of statutorily mandated confidential processes which exist to protect veterans seeking benefits from the Department of Veterans Affairs (VA). And we should be most cautious about adapting to our processes common law standards developed in the context of contested sealing motions involving documents relating to issues of significant public interest.[10]

In analyzing section 7268, the first question that arises is, what did Congress mean by "confidential information"? At the time Congress used these words in November of 1988 in the VJRA, section 3301 (since redesignated 5701) of title 38, U.S.Code, already provided clear direction as to protecting confidential records. Subsection (a) of

10. *See supra* note 8.

that section provided and currently provides:

> (a) **All files, records, reports, and other papers and documents pertaining to any claim** under any of the laws administered by the [VA] and the names and addresses of present or former members of the Armed Forces, and their dependents, in the possession of the [VA] **shall be confidential and privileged,** and no disclosure thereof shall be made except as provided in this section.

(Emphasis added.) [11]

Thus, Congress was not utilizing the term "confidential information" in a vacuum when it enacted section 4068 (now section 7268) in the VJRA. The use in that section of the same term, "confidential", as was then contained in section 3301 suggests that the Court would be well within the proper exercise of its authority if it adopted a standard for ruling on sealing motions that generally maintained the confidentiality of much or at least some of the information VA holds confidential in its benefits files. In adopting such a standard, the Court would be acting in a manner consistent with the nature of the particular judicial responsibilities and functions we are exercising and, very importantly, the legitimate expectations of the parties. These expectations are of great importance in these cases. *Cf. United States Department of State v. Ray,* — U.S. at — — —, 112 S.Ct. at 548–50 (Haitian interviewees' expectation of confidentiality also a significant privacy interest bearing on Court's decision to allow Government to redact identifying information from interview summaries requested under FOIA).

In *Stam,* this Court quite properly pointed out that "a claimant filing a claim with VA has the expectation that the records will be kept confidential." *Id.* at 319. That expectation derives not only from the specific statutory protections in what is now section 5701 quoted above, but from the generally nonadversarial and informal nature of the VA adjudication process. *See Littke v. Derwinski,* 1 Vet.App. 90, 91 (1990); 38 C.F.R. § 3.103(a) (1991).

According to *Stam,* "[t]here is, however, an entirely different set of considerations with respect to the confidentiality of records filed with this Court because of the presumption that the public is entitled to access to judicial records." *Id.* at 319. I am not in agreement with this statement for two reasons. First, as stated above, I believe this Court has been given wide discretion to fashion a rule under section 7268. Second, unless a VA claimant is informed specifically that the nature of the process is going to change when and if he or she files an appeal to this Court, it is completely unfair to change the rules in midstream when the claimant has been lead repeatedly by VA throughout the adjudication process to believe that that process is a special protective one where the records are privileged. Although the majority opinion, *ante,* at 119, discusses section 7268, it does not deal with the strong expectation of privacy and privilege that is encouraged on the part of VA claimants. For example, even the decisions of the rating board or the BVA may not generally be made public unless appropriately redacted. *See* 38 C.F.R. § 1.554(a) (1991) (release of "public" information by VA "after deletion of the portions which are exempt"). This expectation of privacy extends particularly to records, such as medical records, that are traditionally considered to be confidential and are generally extended special protection by VA regulations. *See* 38 C.F.R.

---

**11.** Subsection (b) of section 3301 then listed six specific situations in which such documents are not confidential and privileged. Paragraphs (2) and (5) provided as exceptional circumstances exempt from confidentiality the following:

> (2) When required by process of a United States court to be produced in a suit or proceeding therein pending....
> (5) In any suit or other judicial proceeding when in the judgment of the [Secretary] such disclosure is deemed necessary and proper.

Accordingly, the Secretary of Veterans Affairs was authorized to make disclosure of documents deemed confidential under subsection (a) of section 3301 when required by process of a United States court, including this Court, or in connection with any judicial proceeding when the Secretary deems disclosure "necessary and proper". Neither of these exceptions much illuminate the issue before us in this case, however.

§§ 1.513, 1.513(a), 1.514, 1.514a, 1.554, 1.554(a)(6), (7) (1991).[12] During the Department adjudication process, moreover, VA has an affirmative obligation to inform veterans about all benefits to which they might be entitled, *see* 38 U.S.C. § 241(2) (1988), and to "assist ... claimant[s] in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007); 38 C.F.R. §§ 3.103(a), 3.159 (1991); *see Littke,* 1 Vet.App. at 91–92; *Murphy v. Derwinski,* 1 Vet.App. 78, 80 (1990); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425, 427 (1991). This duty extends by regulation to requiring a VA hearing officer to "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position". 38 C.F.R. § 3.103(c)(2) (1991). *See Douglas v. Derwinski,* 2 Vet.App. 103, 110 (1992). How ironic that these protective and paternalistic obligations imposed on VA to benefit its claimants has much potential to cause embarrassment and humiliation to those claimants if they exercise their right to judicial review.

Furthermore, from a larger perspective, I believe there is no general public interest to be served in publicly disclosing available medical information about a VA claimant. This contrasts with many of the seminal cases in the area of public access where there was a significant public interest being asserted actively by an adverse party seeking access to court records.[13] In this respect, I see little difference between information derived from private medical records and information derived from VA

medical records. However, there is an even greater obligation, I suggest, to maintain the confidentiality of VA's own treatment records (or medical records of private providers functioning under contract with VA). Otherwise, there is substantial danger that entitlements to VA treatment will be compromised. If veteran patients, fearful that their medical records might later be made public or that information from them might be published in a Court opinion, feel constrained in their communications with their treating VA physicians and, therefore, fail to communicate openly and fully with them, the efficacy of their treatment by VA could well be impaired. This, in turn, could lead to an aggravation of their disabilities or at best a continuation of them without improvement.

This concern is extremely important in certain sensitive areas, such as information relating to mental health (the issue in the instant case), sexual dysfunction, and possible criminal activity, as well as the areas specifically protected from disclosure in 38 U.S.C. § 7332 (formerly section 4132)— drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus, or sickle cell anemia, which are required to be presumptively sealed under Rule 48(b) of the Court's Rules of Practice and Procedure, quoted below. Hence, I would be inclined to seal the entire record in any case in which the appellant moved for such sealing on the basis of potential embarrassment or humiliation from making public any of the three types of sensitive VA or private medical records I have listed that are not already presumptively protected by section 7332.

12. A VA claimant's expectation of confidentiality in his relationship with VA derives from an elaborate regulatory structure in 38 C.F.R. § 1.500 through § 1.527 and § 1.576 that is based on the premise that "[f]iles, records, reports and other papers and documents pertaining to any claim" filed with VA "will be deemed confidential ... except in the circumstances ... set forth in" the regulations. 38 C.F.R. § 1.500(a) (1991). Information in medical records is afforded special protection. *See* 38 C.F.R. §§ 1.513, 1.513a, 1.514, 1.514a, 1.554(a)(6)(7) (1991). Such VA medical record information is not to be disclosed even to the

veteran when that "would prove injurious to his or her physical or mental health." 38 C.F.R. §§ 1.513(b)(ix) (1991); *see also* 38 C.F.R. §§ 1.522, 1.577(d). Claim file information may not be disclosed even to a designated recognized service organization unless "the power of attorney ... contains an authorization permitting such disclosure." 38 C.F.R. § 1.525(e) (1991).

13. *See supra* note 8 regarding the absence of an underlying issue of significant public interest in the instant case or other cases likely to be appealed here.

## IV.  IMPLICATIONS OF SEALING A RECORD

The process established for the sealing of a record on appeal to this Court is set forth in this Court's Rules of Practice and Procedure.  Rule 11(c)(2) provides:

> (2) Confidential Information.  On its own initiative or on motion of a party, the Court may take appropriate action to prevent disclosure of confidential information.  See also Rule 48.

U.S.Vet.App. R. 11(c)(2).  The Court's Rule 48(b) provides a procedure by which sealing under Rule 11(c)(2) may be carried out:

> The procedures described in this rule [48] may, in the Court's discretion, be applied to cases that the Court orders sealed but which do not contain records protected by 38 U.S.C. § [7332].

U.S.Vet.App. R. 48(b).  Subsection (a) of Rule 48 provides:

> (a) If, during the time periods set out in Rule 10 or at any other time during a proceeding before the Court, the parties identify records protected by 38 U.S.C. § [7332] and at least one of the parties believes that disclosure of such records is required in such proceeding and, further, the parties cannot agree with respect to the disclosure of such records, the party requesting disclosure shall make immediate application therefor, pursuant to 38 U.S.C. § [7332](b)(2)(D), caption the case "In re Sealed Case No. [insert Court of Veterans Appeals case number]" (not disclosing the identity of any individual), and serve on the protected patient or subject or successor in interest a copy of the application.  Such application must include a statement specifying those steps taken by the parties to reach agreement before application was made to the Court.  Upon receipt of such application, **the Clerk, unless otherwise ordered by the Court, shall** enter the case as "withdrawn" on the docket, assign a new case number and recaption the case using an encoded identifier, and **seal the record on appeal and the file of the Court.**  Thereafter, any party or representative of a party, unless otherwise ordered by the Court, shall refer any subsequent filing only to the new case number and caption assigned by the Clerk.

U.S.Vet.App. R. 48(a) (emphasis added).

Under these Court rules, the sealing of an entire Court record entails giving the case an alphabetized name, such as was done in *EF v. Derwinski*, 1 Vet.App. 324, 325 (1991), and removing the records from public access.  In addition, sealing the entire record entails protecting an appellant from the Court's disclosure of medical treatment information in its opinion.  Although I am sure that the majority opinion has attempted to avoid such disclosures in the instant case, it nevertheless refers at least eight times to the appellant's "schizophrenia" or "chronic paranoid schizophrenia" and twice to "hyper" or "marked" "religiosity" and to his having been "delusional".  It is true that the appellant did not request a sealing of the entire record, but the concerns he expressed in his February 22, 1991, motion to the Court, quoted in part V, below, fairly read, extend as well to these types of disclosures about his mental health.  Given his precarious mental situation, we cannot expect him, proceeding *pro se*, to understand fine distinctions between the implications of a partial sealing and a full sealing of the record.

In actuality, sealing a record involving such sensitive personal information may result in the writing of a more readily understood opinion, since the Court might feel at greater liberty to disclose certain sensitive background information pertinent to the disposition of the case.  In contrast, where the record is not sealed, there might be some reluctance to disclose some of those details in the Court's opinion.

## V.  CONCLUSION

In sum, I find it difficult to divine the interest of the public in gaining access to a veteran's hitherto confidential medical records or information from them.[14] (Here, no party is seeking that access, and the Government does not oppose sealing).  Consequently, I believe this Court should

**14.** *See supra* note 8.

adopt a standard which is best suited to carrying out the purposes of the authorizing law establishing this Court and providing for its jurisdiction—that is, to provide an opportunity for independent and objective review of VA benefits claims. 134 Cong.Rec. S16642, S16643 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston) ("[o]ne of the principal reasons judicial review is needed is to help ensure fairness to individual claimants before the VA"); 134 Cong.Rec. H10342 (daily ed. Oct. 19, 1988) (statement of Rep. Montgomery). Otherwise, there is a real risk that the uncertainty engendered by *Stam* and the majority opinion here in terms of future guidance will serve the opposite result. Not knowing whether they will be able to obtain a sealed record in this Court, potential VA claimants with certain kinds of medical problems may well choose to refrain from (1) seeking VA treatment, (2) disclosing information to their treating VA physicians, or (3) bringing their cases to this Court on appeal after receiving an adverse BVA determination. They would make such unfortunate choices in order to avoid having the previously confidential information in their VA or other medical files made public in this Court's opinions or made available to the public in this Court's records.

Hence, in determining sealing motions, I would start with a scale basically in balance, as the Fifth, Third, and Fourth Circuits have suggested (in *Belo Broadcasting, Bank of America, Littlejohn,* and *Stone*[15]), and in each case, as the **result** reached by the majority suggests it may have done here, place on the scale the interests in public access on one side and the interests militating against access on the other side. By and large, I believe that the interest in public access will generally be a theoretical one in the sealing motions likely to come before this Court.

Turning to the facts of this case, in his statement filed on February 22, 1991, asking that 93 of the 157 pages of the record on appeal be sealed, the appellant, proceeding *pro se*, stated:

15. *See supra* note 6.

I would never have filed my case if I had believed that the record would not be sealed. Much of the material I submitted to the VA is very personal and private and I would be very upset to know that anyone could look at it or have copies made. There are hospital reports and doctor statements on my psychiatric condition and pages of statements made by myself talking about my problems since the illness first occurred in the service in Feb–Mar of '68. I told the VA things that I had never told anyone— things I am only starting to tell my doctor. They are personal and private things that I feel the public has no right to see.

Statement of Appellant at 1. For the reasons stated above, I would seal the entire record and assign an encoded caption to the case because of the sensitive information in the record derived from confidential VA medical records.

I respectfully dissent from the Court's piecemeal approach which may result in a comparable degree of humiliation or embarrassment for the appellant as a result of the information set forth in the Court's opinion. I find no good reason to occasion that risk here in order to vindicate a theoretical presumption of public access to judicial records that has very little to do with the reality of this case.